COMMONWEALTH *vs.* FRANKLIN WHITNEY.

Evidence of habitual intoxication from the use of chloroform, will not sustain a complaint under the Rev. Sts. *c.* 143, § 5, charging a person with being a " common drunkard."

MERRICK, J. The defendant was convicted in the court of

common pleas, upon a complaint founded upon the 5th sec- tion of 143d chapter of the revised statutes, in which he was accused, in general terms, of being a common drunkard.

The presiding judge instructed the jury that to sustain the complaint, it must be proved that the defendant was habit- ually drunk; and that if they found that he had been volun- tarily drunk as many as three times, and under such circumstances as to show him to have been, during the period specified in the complaint, habitually a drunkard, they might convict him. To these instructions we think no valid objec- tions can be urged. But the presiding judge added, that it was not necessary for the government to prove that the defendant was made drunk, or a drunkard, by the use of intox- icating liquors; but that they might convict him, if during the time charged he was a common drunkard by the voluntary use of chloroform and intoxicating liquors, or by chloroform alone.

The jury were thus, in substance, advised that the statutes of the commonwealth prohibit the voluntary and excessive use of chloroform; and that the prostration of physical and intellectual power by such use of it constitutes the legal crime of drunkenness. It is a necessary consequence from this proposition that such voluntary use habitually indulged, makes an individual a common drunkard, and exposes him to the penalties prescribed by law against persons guilty of such disorderly conduct.

Yet there is obviously a wide and well-known difference between chloroform and intoxicating liquors. The one is absorbed by inhalation, the other is consumed as a beverage. The use of each is essentially unlike the use of the other; and if their effects are in some particulars similar, they cannot, in any instance, be said to be identical or of exact resemblance. But it is unnecessary, in reference to the question involved in the prosecution of the defendant, to ascertain the degree or extent of such similarity, because it is apparent from the whole course of legislation on the subject that the statute upon which the prosecution is founded, instead of having been enacted to impose prohibitions upon the use of ether,

chloroform, or narcotic drugs, was designed exclusively to promote or repress the mischiefs resulting from an inordinate use of the different kinds of those intoxicating liquors, the vending of which is subjected to fixed and prescribed legal regulations.

The 5th section of the 143d chapter of the revised statutes authorizes justices of the peace in the several counties of the commonwealth to commit various disorderly and troublesome persons to the house of correction. Among the numerous class of offenders there enumerated, are " common drunkards." But who common drunkards are, and what shall make an individual a common drunkard, the statute does not attempt to define. It leaves that to be ascertained and determined by those magistrates and judicial tribunals before whom accused individuals shall be arraigned. And they have no other means of deducing right conclusions and forming a just judgment, than by understanding the signification of the terms used, in the sense in which they are commonly understood by the community at large, or as the intention of the legislature has been developed in the series of laws which have been enacted upon the same general subject.

There can be no doubt that drunkenness, as it is commonly understood in the community, is the result of the excessive drinking of intoxicating liquors. Such is also the signification given to it by lexicographers. It is ebriety, inebriation, intoxication; all words nearly synonymous, and all expressive of that state or condition which inevitably follows from taking into the body by swallowing, or drinking, excessive quantities of such liquors.

This common signification of the word seems very clearly to be the sense in which it is used by the legislature in all its various enactments relative to the crime of drunkenness, or the disorderly conduct of common drunkards. It is well known that almost from the very earliest period in the settlement of the country, various laws have from time to time been enacted for the restraint and regulation of the sale and use of spirituous and intoxicating liquors. All the devices which experience, learning, and the zeal of philanthropy could discover for the diminution or the suppression of the use of

such deleterious articles as a beverage, at an earlier or later period in the history of the commonwealth, have been resorted to. All these enactments will be found, upon examination, to be pointed against the drinking of these exhausting and destroying liquids, while there is nowhere to be found, and no one would suspect there should be, any intimation against in- dulgence in the inspiration of ether or chloroform, the extra- ordinary effects of which liquids were, till quite recently, wholly unknown and unsuspected.

A few instances from some of the recent statutes of the commonwealth, will suffice to show the meaning of the legis- lature in the use of the terms drunkenness and common drunkard.

The 18th section of the 130th chapter of the revised stat- utes, provides for punishing any person who shall be guilty of the crime of drunkenness " by the voluntary use of any intox- icating liquor ; " thus adopting the precise definition of the lexicographers, and conforming exactly to the signification in which the word is ordinarily understood in the common dis- course of the people.

The whole of the 47th chapter of the revised statutes is substantially designed to restrain, regulate, or prohibit the use of intoxicating liquors as a beverage; and the excess of their use is there obviously treated as drunkenness. Thus in the 11th section, it is said that no innholder or common victualler,— a class of persons to be licensed under its provisions, among other things for the express purpose of vending spirituous liquors, " shall suffer any person to drink to drunkenness on his premises," thus most plainly evincing that the evil which the law by its prohibition attempts to restrain and exterminate, is the excessive consumption as a beverage of such intox- icating liquids as brandy, rum, and gin, which are in other parts of the statute particularly enumerated. The instances thus referred to are only examples of what is to be found throughout the whole course of legislation upon this subject from the earliest colonial to the present time. All its prohibi- tions and penalties have uniformly been applied and pointed directly, both in respect to unlawful sales and excessive use.

to this same general and well-known class of intoxicating liquids. It is the drunkenness which they produce which the laws have denounced. Other substances, capable of producing to a greater or less extent similar effects, are not named in the statutes in connection with them. We cannot therefore doubt that the legislature, by the term common drunkards, as used in the 5th section of the 143d chapter of the revised statutes, intended to designate and comprehend those persons only who drink these intoxicating liquors in unreasonable and excessive quantities and with habitual frequency.

The result is, that the instructions given by the presiding judge in the court of common pleas, given, probably, for the purpose of bringing what may have been thought to be an important practical question before the tribunal of the last resort for its adjudication, must be held to be incorrect. If the excessive use of chloroform, or ether, has unhappily already become an evil which calls for the interposition of legal restraint, the remedy must be supplied by the wisdom of the legislature, and cannot be afforded by judicial construction of a penal statute, a construction which would extend the punishment of fine and imprisonment to acts and conduct against which the authors of the law under consideration could have foreseen no occasion for making provision.

*Exceptions sustained.*

*J. Brown*, for the defendant.

*L. F. Brigham.* (district attorney,) for the commonwealth.