GUST FREEBURG V. STATE OF NEBRASKA.

FILED NOVEMBER 1, 1912. ' No. 17,529.

1. **Drunkards:** INSTRUCTION. The instruction set out in the opinion is *held* to be an erroneous definition of drunkenness and a state of intoxication.

2. **Witnesses:** PHYSICIANS: PRIVILEGED COMMUNICATIONS. The doctor who was called to testify as a witness on behalf of the state, and who dressed the wounds of the defendant, was incompetent to testify to the defendant's condition, over the objection of the defendant that he was disqualified by reason of section 333 of the code.

ERROR to the district court for Phelps county: HARRY S. DUNGAN, JUDGE. *Reversed.*

*James I. Rhea,* for plaintiff in error.

*A. J. Shafer, contra.*

HAMER, J.

The plaintiff in error, Gust Freeburg, hereafter designated as the defendant, was complained against in the police court of the city of Holdrege, July 5, 1911, and was charged with the violation of an alleged ordinance in that city on July 4, 1911. The plaintiff charged that the said Gust Freeburg, "on or about the 4th day of July, A. D. 1911, in the county last named (Phelps), and within the corporate limits of the city of Holdrege, then and there being, did then and there unlawfully become drunk, and was then and there found in a state of intoxication and drunkenness, contrary to section 44 of ordinance 45, of the Compiled and Revised Ordinances of the city of Holdrege." The defendant was found guilty in the police court, and sentenced to pay a fine of $10 and costs. He appealed to the district court, and was there convicted and sentenced to pay a fine of $1 and costs. He brings the case here for review.

Upon that point there seems to be a conflict of evidence, but there is no conflict touching the fact that the defendant was going home with a Mr. Levine, and the city marshal started to arrest him, and the defendant and Levine begged him not to make the arrest. The city marshal struck the defendant over the head with his revolver, but claims in justification that the defendant and Levine objected to the arrest and finally resisted. At the time this happened they were near Levine's tailor shop, and Levine said he wanted to go in his shop to get his coat, and then they would go home together. Freeburg and Levine denied making any resistance to the arrest, and it does not appear Freeburg was in any way offensive in his conduct.

Dr. S. F. Sanders was called by the county attorney, and testified as a witness on behalf of the state, and over the objection of counsel for the defendant. He testified that he was a practicing physician in the city of Holdrege, and that on the afternoon or evening of July 4, 1911, he was called upon to dress certain wounds from which the defendant was suffering; that he found the defendant at the tailor shop of Mr. Levine, and had him removed to his (Sanders') office, which was near by, and where he treated him for the injuries which he had received. He gave as a reason for believing that the defendant was intoxicated that his breath smelled of beer, and immediately after his wounds were dressed the defendant said, "I guess it is all right." The defendant had also said something else which the witness testified he was unable to remember. The fact that Sanders was a doctor, and that he had been called to attend the defendant, and testified to his opinion concerning the condition of the accused as to intoxication, would give his testimony great weight with the jury, because of the confidential relation which he sustained to the defendant, and because as a doctor his knowledge would be supposed to be superior to that of other men.

Section 333 of the code of civil procedure provides: "No practicing attorney, counselor, physician, surgeon,

minister of the gospel, or priest of any denomination shall be allowed, in giving testimony, to disclose any confidential communication, properly intrusted to him in his professional capacity, and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice or discipline."

The foregoing section would seem to justify the exclusion of the testimony of Dr. Sanders. We think that his testimony was clearly prejudicial. *Bryant v. Modern Woodmen of America*, 86 Neb. 372; *Sovereign Camp, W. O. W., v. Grandon*, 64 Neb. 39; *Smart v. Kansas City*, 208 Mo. 162; *Gartside v. Connecticut Mutual Life Ins. Co.*, 76 Mo. 446, 43 Am. Rep. 765; *Masonic Mutual Benefit Ass'n v. Beck*, 77 Ind. 203; *Heuston v. Simpson*, 115 Ind. 62; *Grattan v. Metropolitan Life Ins. Co.*, 92 N. Y. 274.

In the last named case the doctor was asked, "What opinion did you form, based on the general sight of the man, before you made an examination, or before you had any conversation with him?" The court held that the question was properly excluded as privileged within the statute. In the opinion it is said: "We have distinctly held in such a case that the communication to the physician's sense of sight is within the statute, and as much so as if it had been oral and reached his ear."

The Missouri statute declares a physician or surgeon incompetent to testify "concerning any information which he may have acquired, * * * and which information was necessary to enable him to prescribe for such patient as a physician, or do any act for him as a surgeon." Rev. St. Mo. 1899, sec. 4659. The Missouri supreme court on page 183 of the opinion in *Smart v. Kansas City, supra*, said: "The meaning of this section is not veiled in doubt. It disqualifies the physician and surgeon from testifying to any information acquired by them while attending their patients in a professional capacity. The wisdom of such a law is addressed to the legislative branch of the government, and not to the judiciary; the latter has to deal with its meaning, and not the policy of the statute. That policy

is not only well grounded in this state, but is firmly rooted in the jurisprudence of a majority of the states and territories of the Union."

Counsel complain of the ninth instruction. It reads: "The court instructs you, gentlemen of the jury, that where a person is under the influence of intoxicating liquor to such an extent that it affects him mentally or physically, and that such effect resulting from the use of intoxicating liquor is visible to one observing such person, then as a matter of law said person would be in a drunken or intoxicated condition, and it is for you to determine from the evidence whether the defendant in this case was in a drunken or intoxicated condition at the time of his arrest, bearing in mind that the burden of proof is upon the state to establish such fact of drunkenness or intoxication of the defendant by the evidence beyond a reasonable doubt."

In our opinion this instruction is clearly erroneous and prejudicial. It makes the mere fact that the effect resulting from the use of intoxicating liquor *is visible* sufficient evidence that the person is drunk. To illustrate: The action of the person is excluded from the consideration of the jury. The condition of the person is also by this instruction excluded from the consideration of the jury. The only thing submitted to the jury is whether the effect "is visible."

In *Standard Life & Accident Ins. Co. v. Jones,* 94 Ala. 434, 10 So. 530, the question of what constitutes intoxication is discussed, and the court say: "To be under the influence of whiskey is not necessarily to be intoxicated. One may well be said to be under the influence of strong drink when he is to *any extent* affected by it—when he feels it; and this condition may result from potations so small as not to impair any mental or physical faculty, and when the passions are not visibly excited, nor the judgment or any physical function impaired. This is very far short of 'intoxication,' which is the synonym of 'inebriety,' 'drunkenness,' implying or evidenced by undue or abnormal excitation of the passions or feelings, or the im-

pairment of the capacity to think and act correctly and efficiently." "The word 'intoxicated' is synonymous with 'drunk,' and in the Standard Dictionary 'drunk' is defined as under the influence of intoxicating liquor to such an extent as to have lost the normal control of one's bodily and mental faculties, and commonly to evince a disposition to violence, quarrelsomeness and bestiality." 4 Words and Phrases, 3734. "The word 'intoxication' means an abnormal mental or physical condition due to the influence of alcoholic liquors, a visible excitation of the passions, and impairment of the judgment, or a derangement or impairment of physical functions or energies. This implies a condition which would not result from the reasonable, ordinary, and moderate use of the most intoxicating liquors." 4 Words and Phrases, 3735. *Wadsworth v. Dunnam* 98 Ala. 610, 13 So. 597. "Intoxication" is a word merely synonymous with "inebriety" or "inebriation," and is expressive of that state or condition which inevitably follows from taking into the body by swallowing or drinking excessive quantities of intoxicating liquors. *Commonwealth v. Whitney,* 65 Mass. 477. The instruction set out was erroneous and prejudicial.

The judgment of the district court is

REVERSED.