SARAH L. DISHER, ADMINISTRATRIX, APPELLANT, V. CHI-
CAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY,
APPELLEE.

FILED FEBRUARY 25, 1913.    No. 16,924.

1. **Negligence: POWERS OF COURTS: EMPLOYERS' LIABILITY ACT.** The
enactment of the employers' liability act (Comp. St. 1911, ch. 21)
does not affect the judicial power of a court to determine the legal
sufficiency of evidence offered to establish the fact of negligence
or of contributory negligence.

2. ———: COMPARATIVE NEGLIGENCE: DIRECTING VERDICT. In a case
arising under the employers' liability act, where the existence of
negligence or contributory negligence is the matter at issue, a
court is entitled to direct a verdict where the lack of evidence of
negligence, or the undisputed evidence as to more than slight con-
tributory negligence in comparison with that of defendant, is so
clear that reasonable minds cannot differ as to its legal effect;
but in all other such cases the issues must be left to the jury.

3. ———: ———: ———. Where the facts in evidence tend to show
both negligence and contributory negligence, the duty to make
the comparison required by the statute rests with the jury, unless
the evidence as to negligence is legally insufficient, or contribu-
tory negligence is so clearly shown that it would be the duty of
the trial court to set aside a verdict in favor of the plaintiff.
Ordinarily, wherever there is room for difference of opinion
upon these questions, they must be submitted to the jury.

4. ———: ———: QUESTION FOR JURY. The facts in the case ex-
amined, and it is *held* that in this an action under the employers'
liability act the comparison of the degrees of negligence of the
plaintiff and defendant should have been left to the jury.

APPEAL from the district court for Lancaster county:
ALBERT J. CORNISH, JUDGE.  *Reversed.*

*Wilmer B. Comstock,* for appellant.

*M. A. Low, P. E. Walker, E. P. Holmes* and *G. L. De
Lacy, contra.*

LETTON, J.

Action by the administratrix of the estate of David L.

Disher against the Chicago, Rock Island & Pacific Railway Company for negligently causing the death of plaintiff's intestate. At the close of the plaintiff's evidence the district court directed the jury to return a verdict for the defendant, and the plaintiff has appealed.

Many acts of negligence on defendant's part are alleged in plaintiff's petition, which, on account of its great length, is not set forth in this opinion. Defendant, by its answer, denied all the plaintiff's allegations of negligence, and by suitable averments alleged that plaintiff's intestate assumed the risks incident to his employment by the defendant, and that his death was caused solely by his own gross negligence, and not otherwise. The reply was a general denial.

The bill of exceptions discloses that on the 19th day of December, 1908, plaintiff's intestate was employed by the defendant as foreman in charge of a gang of Greek section men who worked under his directions; that on the day above named deceased was directed to take his men to work in repairing a spur track of defendant's railroad which ran from a point on its main line, north of the city of Lincoln, to University Place, a distance of two or three miles northeast of the city; that deceased was furnished with a hand-car on which to transport his tools and men to and from the place where the repairs were being made; that the spur track on which the deceased was at work joined the defendant's main line a short distance northeast of a cut constructed upon a sharp curve which is within the city limits, and over which the viaduct on Holdrege street is constructed; that about the noon hour, and while deceased and his section men were returning from their work on the hand-car, and while coming through the cut above mentioned at a point within the yard limits of the defendant, they were met by one of the defendant's passenger trains, which was about two hours late, and which was running at a rate of speed of about 25 or 30 miles an hour; that the deceased first discovered the approaching train when it was only five or

18

six rail lengths away; that he warned his men of its approach, and all of them jumped off from the hand-car, and attempted to remove it from the track; that when they had three wheels of the car from the track deceased called to his men to look out. They sprang out of the way of the approaching train, and none of them were struck or injured thereby but the deceased, who remained on the track, in the endeavor to remove the hand-car, an instant too long, was struck by the pilot beam of the engine as he stepped away, and was instantly killed.

The negligence charged in the petition is the excessive speed of the train within the city limits through the cut and around the curve, the failure to sound the whistle when approaching the cut, the failure to stop the train after discovering the hand-car, and the failure to keep a proper lookout to discover the hand-car.

The plaintiff contends that, having established a state of facts from which negligence of the railway company in the operation of its train was reasonably inferable, it was the duty of the trial court to submit the case to the jury; that under the employers' liability statute questions of negligence and contributory negligence are for the jury; and that it was an usurpation of the functions of the jury for the trial court to determine these questions. The ordinances of the city of Lincoln provide that no train or engine shall be run or operated upon any railroad within the city limits at a speed in excess of four miles an hour. The plaintiff's evidence shows that the usual and ordinary rate of speed of trains going out through this cut was from 15 to 20 miles an hour. The rules of the railway company require that two long and two short blasts of the whistle shall be sounded at obscure places. The evidence is to the effect that no whistle was sounded or bell rung. It also shows that from the place of the accident, looking down the railroad track in the direction from which the train came, a person standing in the center of the track could be seen a distance of 16 rail lengths away, or about 480 feet. There is also testimony from the men upon the

hand-car that they first saw the engine five or six rail lengths away. The proof also shows that such a train as the one which struck the deceased, under similar conditions and equipped with proper appliances, could be stopped within 100 feet, if running at a speed of 15 miles an hour, and within 150 feet, if running at the rate of 20 miles an hour. The train did not actually stop until it had proceeded about its length beyond the point of the accident, or about five car lengths. Considering the evidence as to the violation of the city ordinance, that the place of the accident was within the yard limits of the defendant and within the city limits, the fact that the usual rate of speed in running through this cut was only 15 to 20 miles an hour, while on this day the train was running at the rate of 25 to 30 miles an hour, and that no signals were given before the cut was entered, we think there was sufficient evidence tending to establish negligence in the operation of the train to take the case to the jury; in other words, a trial court would not be justified, as a matter of law, in declaring that the defendant was not negligent in the operation of its train at that place and time.

Was this negligence the proximate cause of the death of the deceased, or was he so clearly guilty of such contributory negligence that the court could say, as a matter of law, that the accident resulted from his own default?

Disher at the time of the accident was in charge of a gang of Greek section men. By the rules of the company a track foreman "must not run his hand-car without at least one man facing in each direction, nor without full protection by signals when necessary." The evidence shows that he was advised of the fact that trains were liable to be operated at other than the regularly scheduled hours, and that it was his duty to look out for the same at all times and places upon the track. It is also shown that he had been directed by his immediate superior to take precautions in passing through this cut, and that it had been his custom, during the time he had

been at work upon the switch at University Place, to send a man ahead each day before passing through upon his return to Lincoln with the hand-car. Taking all this evidence into consideration, it would seem that the deceased was guilty of negligence in attempting to pass through this cut without taking the precaution of sending a man ahead to look out for trains before entering the cut with the hand-car.

This fact alone, however, does not determine the question presented. After the hand-car was in the cut and the train was seen approaching, the car was stopped by the deceased, apparently in ample time to have removed it from the track if the train had been running either at the rate of speed prescribed by the ordinance, or at the higher rate of 15 to 20 miles an hour, which was the customary rate when passing eastward through the cut. The Greek laborers were unhurt, and the deceased was struck by the projecting pilot beam just as he was moving away. In his endeavor to save the lives of the passengers on the train and prevent the destruction of the property of the company he lingered an instant too long. It seems clear that if the train had been running at the usual and ordinary rate of speed the deceased would have reached a place of safety and that his death could not have occurred. It is a reasonable deduction from the testimony that the hand-car could have been seen by the engineer as far as a person standing upon the track could see another, or about 480 feet, and that the train might have been stopped in time or its speed reduced sufficiently to prevent the accident if a proper lookout had been kept.

Since we must conclude there was negligence on the part of the deceased in entering the cut, the judgment of the district court would be entitled to affirmance, if the law stood as it did before the enactment of the employers' liability act.

Section 4, ch. 21, Comp. St. 1911, commonly termed "Employers' Liability Act," provides: "That in all actions hereafter brought against any railway company to recover

damages for personal injuries to an employee, or when such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery when his contributory negligence was slight and that of the employer was gross in comparison, but damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee—all questions of negligence and contributory negligence shall be for the jury."

The appellant contends that the clause, " all questions of negligence and contributory negligence shall be for the jury," makes it the duty of the court, regardless of what the proof may show, to submit the question of the existence of negligence or contributory negligence to the jury, in order to compare the negligence of the workman and the negligence of the employer, and that the trial court has no power to compare the negligence of the parties and determine, as a matter of law, that that of the employee was so gross that he is not entitled to a recovery. While this clause is declaratory of the existing rule, we think that at the time of its enactment in positive form the legislature had in mind the tendency of some courts to remove such questions in close cases from the jury, and that it was intended to extend rather than to limit the duty of the trial court to submit the same. We are not able, however, to adopt the construction for which the appellant contends, and hold that in every case the evidence must go to the jury, regardless of its legal effect.

The doctrine of comparative negligence adopted by this statute has long been in force in some other states, though it has not been approved by legal philosophers or by the courts generally. 1 Thompson, Law of Negligence, sec. 259; 1 White, Personal Injuries on Railroads, sec. 443. In the state of Illinois, where this doctrine has long existed, the question of whether negligence is a question of fact for the jury in all cases has been frequently decided, and it is held that the question is not always for the jury. In *Chicago, B. & Q. R. Co. v. Dewey*, 26 Ill. 255, a verdict

for $5,000 was set aside, for the reason that the court found that the deceased was, as a matter of law, guilty of gross negligence in attempting to pass between cars of a train standing at a station and on the point of moving, although the court also believed that the railroad company was guilty "of such negligence as would have rendered them liable for injury to a child, or a person of less than ordinary mind." The same rule was followed in *Chicago, St. L. & P. R. Co. v. Hutchinson*, 120 Ill. 587; *Werk v. Illinois Steel Co.*, 154 Ill. 427; *Beidler v. Branshaw*, 200 Ill. 425; *Hewes v. Chicago & E. I. R. Co.*, 217 Ill. 500. See, also, Illinois cases in note to section 451, 1 White, Personal Injuries on Railroads.

The rule adopted seems to be that the courts may decide the question if the plaintiff has clearly been guilty of gross and culpable negligence; but, if his negligence is slight as compared with that of the defendant whose negligence is gross, he may recover, and the comparison must be made by the jury. *Parker v. Lake S. & M. S. R. Co.*, 20 Ill. App. 280.

In Wisconsin, also, it has been declared that this provision of the act does not affect the judicial power of the court to determine the legal sufficiency of the evidence tending to prove the fact of negligence or contributory negligence. *Haring v. Great Northern R. Co.*, 137 Wis. 367.

In *Kiley v. Chicago, M. & St. P. R. Co.*, 138 Wis. 215, it was said: "Did the legislature intend by the provisions of subdivision 5 of sec. 1816, as amended, to confer judicial power, vested in the court, on the jury? It declares: 'In all cases under this act the question of negligence and contributory negligence shall be for the jury.' In their general sense the words are but a declaration of the law as it exists, namely, that when the court has found that there is legal evidence tending to show negligence or contributory negligence, it is for the jury to determine from the evidence adduced whether negligence or contributory negligence exists."

Kansas at first adopted the rule of comparative negligence, and afterwards repudiated it. While it was in effect that court held: "It is a question of fact for the jury to determine whether there has been negligence, and its nature and degree; but it is a question of law for the court to determine what degree of care and diligence on the one side and of negligence on the other will entitle the plaintiff to recover." *Caulkins v. Mathews,* 5 Kan. 191.

We are satisfied that in a proper case, where the evidence or lack of evidence is so clear that reasonable minds could not differ, the power is with the court to direct a verdict; but in all other cases under this statute the issues must be left to the jury.

Where the facts in evidence tend to show both negligence and contributory negligence, the duty to make the comparison rests with the jury, unless more than slight contributory negligence of the plaintiff, in comparison with that of defendant, is so clearly shown that it would be the duty of the trial court to set aside a verdict in favor of the plaintiff. Ordinarily, wherever there is room for a difference of opinion upon these questions, they must be submitted to the jury. In line with this idea, in Georgia it is held that where the plaintiff's negligence is shown to have been the sole cause of the injury he cannot recover, and that where his negligence is shown to be a part of the cause of the injury his recovery will be divided in part. The court say: "For the apportionment of damages according to the relative fault of the parties, there seems to be no standard more definite than the enlightened opinion of the jury. * * * But it should not be overlooked that the defendant is not to be deemed in fault at all, unless there was a failure to exercise ordinary or reasonable diligence." *Georgia R. & B. Co. v. Neely,* 56 Ga. 540; *Atlanta & R. A. L. R. Co. v. Ayers,* 53 Ga. 12.

The question, then, remains whether the evidence in this case so conclusively establishes contributory negli-

gence, as a matter of law, that the plaintiff is not entitled to have the facts as to his negligence and that of the defendant submitted to the jury for comparison. We are unable to say that the negligence of the deceased in attempting to remove the hand-car from the rails, after he had ample time to have saved himself, in view of the fact that he was entitled to presume that the approaching train was coming at the usual and ordinary rate of speed, was so great as to require us to say that, as a matter of law, there can be no recovery. If the jury should consider, after hearing evidence in behalf of the defendant, that the negligence of both parties was equal, or that the negligence of the deceased was more than slight in comparison with that of defendant, then there can be no recovery, under all the authorities we have examined. 1 Thompson, Law of Negligence, ch. 10; 1 White, Personal Injuries on Railroads, ch. 17.

The cases cited by defendant with respect to the duties of section foremen in keeping a lookout for trains, and the particular cases in which the facts were that section foremen in charge of hand-cars were caught by moving trains in cuts on the main line at a distance from a station, and at a point where trains might be expected to be running at their full rate of speed, are not applicable to this case, where the accident occurred within the yard limits, and where both custom and law required a slow movement of the train and proper signals. Furthermore, the cases referred to were decided at a time when, as the law stood, contributory negligence of any degree was a complete bar to a recovery, and they are not applicable to the enlarged liability under the statute.

It is our view that it was the duty of the court, under the facts in evidence, to instruct the jury upon the law of negligence, and for that body to say whether negligence existed on the part of either deceased or defendant; to determine whether that of the deceased, if any, was slight, and that of the defendant, if any, gross in comparison, and either to refuse a recovery, if they find that the negligence

of the deceased was equal to or more than slight as compared with that of defendant, or to diminish the amount of recovery in proportion to the amount of negligence attributable to the deceased, in case they find his negligence was slight in comparison.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.

BARNES, J., dissenting.

I am unable to concur in the majority opinion. The plaintiff's undisputed evidence in this case shows that Disher was the foreman of the section men upon the hand-car at the time the accident occurred; that for six or seven months he had worked on the section where he was killed; that he had passed around the curve and through the cut in question an innumerable number of times; that it was the well-known rule and custom, and Disher had been instructed, to never run his hand-car around the curve and through the cut without sending a man ahead to flag the cut and see that no train was approaching. He also knew the rule that foremen and trackmen were required to keep out of the way of regular trains, late trains, special or wild trains running at all rates of speed, and that he could expect to meet such trains at any and all times. Notwithstanding this, and his knowledge of the existing physical conditions, and knowing that it was his duty to keep out of the way of all such trains, so as to allow them to proceed at full speed, he went into the cut with a heavily ladened hand-car, without stopping to look or listen, and without sending a man ahead to flag the cut. He knew of the rule, for the testimony shows that before the day of the accident he had always flagged this curve; but on that day, while hurrying to his dinner, he neither stopped his car nor took any precaution whatever to protect himself, and utterly failed to consider the lives of the section men under his charge until he saw the approaching train. Then it was

too late to remove the car from the track before the train struck him. The plaintiff's own evidence, therefore, makes out a case of utter recklessness on the part of the deceased. He was clearly guilty of gross contributory negligence in running his hand-car into the cut where he was struck, without having sent a man ahead to watch for and warn the passenger train, which he might have expected was approaching; and but for his own negligence in that respect he would not have been killed. I am unable to understand how reasonable minds can reach different conclusions upon the undisputed testimony found in this record. *Chicago, B. & Q. R. Co. v. Healy,* 5 Neb. (Unof.) 225; *Cincinnati, N. O. & T. P. R. Co. v. Holland,* 117 Tenn. 257, 96 S. W. 758.

In *Chicago, B. & Q. R. Co. v. Healy, supra,* the deceased was a section foreman on the defendant's road, and on the morning of the accident he, with five others of the section crew under his charge, started over the track upon a hand-car, going to their work. At a certain point on his section the defendant's track makes a sharp curve through a cut. The deceased and his crew went into this curve, just as Disher did in the case at bar, without stopping to send a man ahead to flag the curve. While proceeding through the cut an extra train appeared, running 30 or 40 miles an hour. As soon as the deceased saw the train he exclaimed: "Here she is; get her off, boys!" The hand-car was stopped, and all hands undertook to remove it from the track. Before it could be removed the train struck it, and the deceased was instantly killed. On those facts it was held that there was no negligence shown on the part of the company, and that the cause of the injury was the reckless negligence of the deceased in going into the cut without flagging it.

Therefore I am of opinion that, even if the defendant was guilty of negligence, its negligence was slight in comparison to that of the plaintiff's decedent, which, as we have seen, amounted to gross contributory negligence. To such a case the provisions of section 4, ch. 21, Comp. St. 1911,

have no application. That section provides that in all actions hereafter brought against any railway company to recover damages for personal injuries to an employee, or when such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, when his contributory negligence was slight, and that of the employer was gross in comparison, but damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee. All questions of negligence and contributory negligence shall be for the jury.

As I view the provisions of this section, they have no application to a case where the negligence of the employee was gross, and where a fair consideration of plaintiff's own evidence establishes, beyond question, gross contributory negligence on the part of the employee. In such a case the provisions of the statute leave no question for the consideration of the jury. It was not intended that in such a case there would or could be a comparison of negligence as between the employee and the employer. Notwithstanding the clear provisions of this statute, the majority insist that, according to the facts established in this case, the right of recovery should have been submitted to the jury. Upon this proposition I am utterly unable to concur with my associates.

As I view the case, the trial court properly instructed the jury to return a verdict for the defendant, and its judgment should be affirmed.