ROBERT O'NEILL, APPELLANT, v. MARION A. HENKE, APPELLEE.

94 N. W. 2d 322

Filed January 16, 1959. No. 34458.

632

*Smith Brothers* and *Hugh Stuart,* for appellant.

*William A. Stewart* and *John E. Dougherty,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an action where plaintiff, a guest passenger, seeks to recover damages resulting from a collision of a motor vehicle, driven by defendant, with a truck on a highway. The right to recover is based on alleged gross negligence of the host driver under the civil liability provisions of section 39-740, R. R. S. 1943. At the conclusion of all the evidence the trial court sustained a motion of the defendant to dismiss on the ground that the evidence would not sustain a finding of gross negligence.

Plaintiff appeals.

We reverse the judgment of the trial court and remand the cause.

The evidence is here stated under the established rule that such a motion admits the truth of all competent evidence favorable to the party against whom the motion is directed; that every controverted fact must be resolved in his favor; and that he is entitled to the benefit of every inference that can reasonably be deduced from the evidence.

The accident happened on the upgrade side of a hill and near the crest of a country road. The road was a graveled, improved highway, with a smooth surface, and with a width, normally suitable for travel, of 25 feet. However, at the time of the accident there was a windrow of gravel along the west side that reduced the available normal travel width of the road to 23 feet. We refer later herein to the position of the vehicles involved with reference to the 23-foot width of the road. See Krepcik v. Interstate Transit Lines, 154 Neb. 671, 48 N. W. 2d 839.

The automobile in which plaintiff and defendant were riding was a passenger car. The truck involved is described as a 1-ton truck upon which a grain box had

been mounted. The box was less than 8 feet wide.

At the point of the accident and for some distance prior thereto the road passed through a hilly pasture land area that was sparsely settled.

The road was dry and the weather was clear. The accident happened October 28, 1956, about 5:35 p.m. The sun was shining. There was no wind or other unfavorable atmospheric conditions.

Plaintiff and defendant had been friends and fellow employees for a number of years.

On Saturday evening defendant had attended a party at a club house outside the city of Lexington where he had consumed some intoxicating liquor. On Sunday about noon defendant and two other men had gone to the club house as the designated "crew" to clean up after the party of the night before. During the middle of the day the three men consumed about three-fourths of a bottle of whiskey, described as either a fifth or a pint.

The three men started to return to Lexington. Defendant was driving. After 2 miles of the trip had elapsed, one of the other men took over the driving because of the condition of the defendant. They went to Lexington where about 4 p.m. defendant and the others had a full course steak dinner. After it defendant gave no appearance of intoxication. About 5 p.m. defendant drove to the home of the plaintiff and invited plaintiff to accompany him to Eddyville, a town north of Lexington. At that time defendant's eyes were "glassy" but he appeared to be all right. Plaintiff and his wife agreed to go.

When plaintiff and his wife got in the car they smelled alcohol on the breath of defendant.

Defendant drove out of Lexington, obeying all stop signs, and for the first 7 or 8 miles of the trip in the country he drove at a reasonable rate of speed and so as to cause no concern. Defendant then began to increase his speed, driving at times from 70 to 80 miles per hour. At one time he drove across an irrigation lateral bridge

that was elevated above the road and threw his passengers into the top of the car. He slipped around corners and curves at an excessive speed. At one time plaintiff asked defendant, "What's the hurry?" Plaintiff at other times would look at the speedometer and defendant would then slow down, and then speed up. He drove mostly in the center of the road, weaving to the right and to the left.

At a distance of about 3 or 4 blocks south of the point of the collision defendant was driving in the center of the road at a speed in excess of 70 miles per hour. Plaintiff asked him to get over on the right side of the road. Defendant did not do so and continued along the center of the road, looking straight ahead, and without diminishing his speed.

About 200 feet from the point of the accident, plaintiff saw the truck coming over the hill. It was on its own side of the road. Defendant apparently saw it also for he put on his brakes and skidded a distance of 121 feet to the point of impact. His course of travel did not change from a directly forward movement along the center of the road.

The driver of the truck saw the on-coming car of the defendant and turned to his right to avoid a collision. He got over to the right sufficiently to avoid a collision with the body of the truck proper. Defendant's car hit and sideswiped the grain box. Defendant's car then swung to the right, and its wheels in a sidewise scuffing position, traveled a distance of 172 feet where it left the road on the left side, went into the ditch along the road, turned over, and came to rest 237 feet from the point of impact.

Plaintiff and his wife were thrown from the car. Plaintiff was severely injured. In the few minutes immediately after the accident, three different witnesses talked with the defendant. They smelled alcohol on his breath, his eyes were glassy, his speech was "thick," and he walked unsteadily. Two of these witnesses, after

describing defendant's appearance, speech, and actions, gave it as their opinion that he was under the influence of intoxicating liquor at that time.

The act commonly called the "guest passenger" statute provides in part: "The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in such motor vehicle as a guest or by invitation and not for hire, unless such damage is caused by the driver of such motor vehicle being under the influence of intoxicating liquor or because of the gross negligence of the owner or operator in the operation of such motor vehicle." § 39-740, R. R. S. 1943.

In McCown v. Schram, 137 Neb. 498, 289 N. W. 890, we pointed out that under the statute driving while under the influence of intoxicating liquor was a distinct ground of liability from that of the driver of an automobile based upon gross negligence in the operation of a motor vehicle. See, also, Brown v. Mulready, 140 Neb. 500, 300 N. W. 421; Johnk v. Scanlon, 136 Neb. 187, 285 N. W. 488.

The plaintiff here does not base his cause of action upon the distinct ground of liability of driving while under the influence of intoxicating liquor. Rather plaintiff bases his cause upon an allegation of gross negligence in six particulars, one of which is that defendant was operating his automobile while under the influence of "alcoholic" liquor. We see no reason to differentiate between that allegation and the statutory phrase "intoxicating liquor." The latter includes the former as used here. We have held: "Intoxicating liquor generally includes and means any liquor intended for use as a beverage, or capable of being so used, which contains alcohol no matter how obtained, in such a percent that it will produce some degree of intoxication when imbibed in a quantity that may practically be drunk. The distinctive characteristic of all liquors is that they contain alcohol, the basis of all intoxicating

drinks; that they are capable of being consumed as a beverage; and that when so used, they will produce intoxication to some extent in the usual and common acceptation of the term." Franz v. State, 156 Neb. 587, 57 N. W. 2d 139.

We consider separately whether the evidence here as to driving while under the influence of intoxicating liquor is sufficient to take the case to the jury under the gross negligence issue.

In Danielson v. State, 155 Neb. 890, 54 N. W. 2d 56, we had a criminal case where the defendant was charged with operating a motor vehicle while under the influence of alcoholic liquor. We approved the following instruction: " 'The meaning of the term "under the influence of alcoholic liquor" as applied to a person operating a motor vehicle is, if the alcoholic liquor has so far affected the nerves, brain and muscles of the operator of a motor vehicle so as to impair to any appreciable degree his ability to operate his motor vehicle in the manner that an ordinary prudent and cautious man, in full possession of his faculties would operate the same, then the operator of said motor vehicle is under the influence of alcoholic liquor.' "

In Uldrich v. State, 162 Neb. 746, 77 N. W. 2d 305, we approved the following instruction: " '* * * a person is "under the influence of alcoholic liquor" if such person is under the influence of intoxicating liquor to such an extent as to have lost to an appreciable degree the normal control of his body or mental faculties.' "

In Hoffman v. State, 162 Neb. 806, 77 N. W. 2d 592, we approved this instruction: " '* * * the term "under the influence of intoxicating liquor," means that a person is under the influence of alcoholic liquor if such person is under such influence of intoxicating liquor to such an extent as to have lost to an appreciable degree the normal control of his body or mental faculties, and to the extent that there is an impairment of the capacity to think and act correctly and efficiently.' "

The above decision was had in a case involving the motor vehicle homicide act. The same language in the various statutes refers to the same subject matter and should receive the same construction.

In 1919 the Legislature in the Civil Administrative Code enacted a provision that: "It shall be unlawful * * * for any intoxicated person to operate a motor vehicle * * *," and made it a misdemeanor. Laws 1919, c. 190, art. IV, § 27, p. 828. In 1912 we decided Freeburg v. State, 92 Neb. 346, 138 N. W. 143, Ann. Cas. 1913E, 1101, wherein intoxication was defined in one instance as "synonymous with drunk" and as the condition that follows from the drinking of excessive quantities of intoxicating liquor.

In 1931 the Legislature changed the phrase to "operating a motor vehicle while under the influence of intoxicating liquor." Laws 1931, c. 103, § 1, p. 275. The language of the present law is "under the influence of alcoholic liquor." § 39-727, R. S. Supp., 1957. The same Legislature enacted the guest passenger statute using the phrase "under the influence of intoxicating liquor." Laws 1931, c. 105, § 1, p. 278.

It is to be noted that in the 1931 act (Laws 1931, c. 103, p. 274), the Legislature in the title stated that it was an act "to provide penalties for the operation of motor vehicles by persons while in a state of intoxication," although in the body of the act it used the clause "while under the influence of intoxicating liquor." In 1935 the act was amended, with the provisions remaining in the title and body of the act as before. Laws 1935, c. 134, p. 483. In 1937 the act was again amended. The Legislature then used the clause "while under the influence of alcoholic liquor" in the title of the act as well as in the body of the act. Laws 1937, c. 140, p. 503. The act was again amended in 1947 (Laws 1947, c. 148, p. 407); again in 1949 (Laws 1949, c. 116, p. 309); and again in 1951 (Laws 1951, c. 118, p. 528). In all of these amendments the title and body of the act re-

mained the same as in the 1937 act so far as the matter here being considered is concerned. The act was again amended in 1953 and the clause "under the influence of alcoholic liquor" was retained in the body of the act. Laws 1953, c. 214, p. 755. This enactment was subsequent to our decision in Danielson v. State, *supra*.

Commenting on a similar legislative history, the Supreme Court of Wisconsin in City of Milwaukee v. Richards, 269 Wis. 570, 69 N. W. 2d 445, said: "This change indicates that the legislature, with increasing awareness of the importance of safety in the operation of dangerous instruments on the highway, extended the prohibitions from persons who would come under the restricted category of absolute intoxication to those persons whose reactions would show that they were merely 'under the influence of intoxicating liquor'."

Two conclusions follow from the legislative provision here considered. The Legislature placed no limitation upon the extent of the influence required, nor can we do so save as we have defined the term as we are required to do. In passing it may be observed that the rule which we have adopted is less inclusive than the definition followed in some other jurisdictions. See, Hasten v. State, 35 Ariz. 427, 280 P. 670; City of Milwaukee v. Richards, *supra*.

The Legislature has not seen fit to change the definition we have adopted and we do not do so.

The second conclusion is that the Legislature in fixing liability for damage caused by the driving of a motor vehicle while under the influence of intoxicating liquor, put it on a parity with liability for damage caused by gross negligence in the operation of a motor vehicle. Without the sustaining benefit of a statute such as ours, in Tomasik v. Lanferman, 206 Wis. 94, 238 N. W. 857, the Supreme Court of Wisconsin held that "the driving of a car on our highways by one intoxicated fully responds to all of the elements necessary to constitute gross negligence." The Wisconsin court has repeatedly

followed the above decision as late as Twist v. Aetna Casualty & Surety Co., 275 Wis. 174, 81 N. W. 2d 523. The case has been quoted with approval in Zalewski v. Yancey, 101 Ohio App. 501, 140 N. E. 2d 592, and Scott v. Gardner, 137 Tex. 628, 156 S. W. 2d 513, 141 A. L. R. 50.

It necessarily follows that evidence sufficient to take a case to the jury on the ground of liability for driving while under the influence of intoxicating liquor is sufficient to take the case to the jury when that element is pleaded as gross negligence.

We have heretofore set out the evidence as to the defendant being under the influence of intoxicating liquor. It is patent that it would sustain a finding that the influence existed to the extent that he had lost to an appreciable degree the normal control of his body or mental faculties to the extent that there was an impairment of the capacity to think and act correctly and efficiently.

We construed the guest passenger statute for the first time in Morris v. Erskine, 124 Neb. 754, 248 N. W. 96. In the many cases dealing with that statute since, we have not departed from the basic rules there stated. They are: Gross negligence, within the meaning of section 39-740, R. R. S. 1943, means negligence in a very high degree, or the absence of even slight care in the performance of a duty. The existence of gross negligence must be determined from the facts and circumstances in each case. The question of gross negligence is for the jury where the evidence relating thereto is conflicting and from which reasonable minds might draw different conclusions.

The defendant analyzes many of our decisions where we based the finding of gross negligence on fact elements appearing in each case. He then advances the contention that the common denominator of the cases shows that there must be (1) consciousness of peril apparent to the driver; (2) heedlessness of the consequences; (3) a continuous course of negligent opera-

tion or conduct; (4) excessive speed; and (5) failure to heed timely warnings or protest.

We need refer to only one of the cases cited—that of Werner v. Grabenstein, 165 Neb. 231, 85 N. W. 2d 297, wherein we held: "A finding of gross negligence is justified if there is evidence of imminence of danger which was apparent to or known by the operator of an automobile and he was timely cautioned by the guest concerning the manner of his operation of the automobile but he persisted in his negligent operation thereof and if there is evidence that the operator was heedless of the consequences which might ensue by his negligent operation of the automobile consisting not only of rate of speed but of other conditions, known to the operator, which enhanced the peril."

This does not mean that all of those fact elements must exist in order to sustain a finding of gross negligence. It does mean that where those fact elements do exist the evidence is sufficient to sustain a finding of gross negligence.

For instance the first element of the rule proposed by the defendant is that the driver must be conscious of the peril, or as stated in the above quote, the imminence of danger must be apparent. We held in Thurston v. Carrigan, 127 Neb. 625, 256 N. W. 39, that: "* * * it is not necessary in all cases that the operator of a car be aware of impending danger in order to hold him guilty of gross negligence, but that is a circumstance which should be considered." See, also, Cunning v. Knott, 157 Neb. 170, 59 N. W. 2d 180, for a like holding.

The ultimate test in all cases is that stated in Morris v. Erskine, *supra:* "The existence of gross negligence must be determined from the facts and circumstances in each case."

The first "particular" which plaintiff pleaded as a fact element of gross negligence is that defendant drove his automobile at a high and unlawful rate of speed and in total disregard of the existing conditions. There was

evidence received that at times the defendant drove at speeds as high as 80 miles per hour and that for some distance immediately before the accident his speed was in excess of 70 miles per hour.

At the time this accident occurred, section 39-723, R. R. S. 1943, provided, so far as applicable here, that: "No person shall operate a motor vehicle on any highway outside of a city or village at a rate of speed greater than is reasonable and proper, having regard for the traffic and use of the road and the condition of the road, nor at a rate of speed such as to endanger the life or limb of any person, nor in any case * * * at a rate of speed exceeding sixty miles per hour between the hours of sunrise and sunset, and fifty miles per hour between the hours of sunset and sunrise."

Section 39-7,108, R. R. S. 1943, also provided in part that: "No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing. * * * The following speeds shall be prima facie lawful, but in any case when such speed would be unsafe, they shall not be lawful: * * * sixty miles per hour between the hours of sunrise and sunset and fifty miles per hour between the hours of sunset and sunrise upon any highway outside of a city or village. * * * The fact that the speed of a vehicle is lower than the foregoing prima facie limits shall not relieve the driver from the duty to decrease speed when approaching and crossing an intersection, when approaching and going around curves, when approaching a hill crest * * *."

That the jury could have found the defendant violated these provisions of the statute is obvious.

The established rule is: "A violation of statutes regulating the use and operation of motor vehicles upon the highways is not negligence per se, but evidence of negligence which may be taken into consideration with all the other facts and circumstances in determining whether or not negligence is established thereby." Landrum v.

Roddy, 143 Neb. 934, 12 N. W. 2d 82, 149 A. L. R. 1041. This was a guest case.

The rule is: "Excessive speed of a vehicle does not necessarily establish gross negligence, although it is a factor to be considered." Cunning v. Knott, *supra*.

We next consider certain allegations as to gross negligence together. They are that the defendant failed to have his automobile under proper control; that he drove in such a manner that he could not stop within the range of his vision; and that he failed to keep a proper lookout for the danger when his automobile was approaching the hill crest. Here again it is manifest that the jury could have found that he did not have his car under control so as to turn aside the 1 or 2 feet necessary to have avoided the collision and likewise that he could not stop within the range of his vision.

The rule is: "As a general rule it is negligence as a matter of law for a motorist to drive an automobile on a highway in such a manner that he cannot stop in time to avoid a collision with an object within the range of his vision. * * * The basis of this rule is that a driver of an automobile is legally obligated to keep such a lookout that he can see what is plainly visible before him and that he cannot relieve himself of that duty. And, in conjunction therewith, he must so drive his automobile that when he sees the object he can stop his automobile in time to avoid it. * * * Exceptions have been recognized to this general rule where the object or obstruction or depression is the same color as the roadway and for that reason, or for other sufficient reasons, cannot be observed by the exercise of ordinary care in time to avoid a collision." Guerin v. Forburger, 161 Neb. 824, 74 N. W. 2d 870. Quoted with approval in Egenberger v. National Alfalfa Dehydrating & Milling Co., 164 Neb. 704, 83 N. W. 2d 523.

We return now to that provision of section 39-7,108, R. R. S. 1943, that the fact the speed is lower than the prima facie limit of the act shall not relieve the driver

of the duty to decrease speed "when approaching a hill crest." Here the jury could have found not only that the defendant was not driving within the prima facie limit of the law, but was exceeding it; and also that he did not comply with the statutory duty of decreasing speed when approaching a hill crest.

In Reuhl v. Uszler, 255 Wis. 516, 39 N. W. 2d 444, the court held: "Independent of statute, when the view of the driver of an automobile is obstructed, whether by reason of a grade or otherwise, the speed of the car should be so reduced that the car can be stopped within the distance the driver can see ahead."

The evidence here would sustain a finding that the truck which came into view over the hill was first seen at a distance of 200 feet and that it was traveling at a speed of 35 to 40 miles per hour. It was in part closing the distance between the two vehicles. There is no contention that there was any other obstruction on the highway at the location here involved. Under these circumstances the rule regarding negligence based on inability of a driver to stop in time to avoid a collision with an object within the range of his vision has no application. As to this issue each party had the right to assume that the other would obey the rules of the road.

In Tews v. Bamrick, 148 Neb. 59, 26 N. W. 2d 499, we held: "Under the law of this state the lawfulness of the speed of a motor vehicle, within the limits fixed by law, is determined by the further test of whether the speed was greater than was reasonable and prudent under the conditions then existing. * * * What is a reasonable speed is necessarily largely dependent on the situation and the surrounding circumstances, it being obvious that a speed which would be safe, reasonable, and proper in some places and under some circumstances might be highly dangerous, unreasonable, and improper in other places and under other circumstances."

This brings us to the other particular that defendant was operating his automobile on the left or wrong side

of the road. It is patent that the jury could have so found, and that in the last 3 or 4 blocks of his travel that his car effectively blocked the right-of-way of a car traveling in the opposite direction on the highway.

Section 39-746, R. R. S. 1943, provides in part that: "Upon all highways of sufficient width, except upon one-way streets, the driver of a vehicle shall drive the same upon the right half of the highway * * *." Section 39-748, R. R. S. 1943, provides that: "Drivers of vehicles proceeding in opposite directions shall pass each other to the right, each giving to the other at least one-half of the main traveled portion of the roadway as nearly as possible." Citing section 39-746, R. R. S. 1943, we have held: "The driver of a vehicle on a public highway is required to operate it upon the right half of the highway unless it is impracticable to do so." Barney v. Adcock, 162 Neb. 179, 75 N. W. 2d 683.

The rule is: "The violation of an ordinance or statute requiring automobiles and other vehicles to drive to the right of the center of the highway does not constitute negligence per se, or as a matter of law; but whether or not such violation constituted negligence is a question for the jury under proper instructions." Davis v. Dennert, 162 Neb. 65, 75 N. W. 2d 112.

Not included in this summary is the allegation that defendant drove his automobile while under the influence of alcoholic liquor. As to that allegation we have made a separate finding. As to the other particulars we have found that there was evidence sufficient to sustain a finding of negligence as to each of them.

Before we go to the question of whether or not the evidence is sufficient to support a finding of gross negligence, there are other matters which should be mentioned.

The question of whether the defendant was operating his automobile under the influence of alcoholic liquor is for the jury to determine. Without regard to the determination of the jury on that question as a separate

issue, that evidence is for the consideration of the jury in determining whether the defendant was guilty of negligence under the other specifications, under the rule that: "Evidence as to drinking intoxicants within a reasonable time prior to an accident is a circumstance to be considered in determining whether or not a driver of a car is guilty of gross negligence." Cunning v. Knott, *supra*.

Defendant in his argument stresses the contention that there was only one caution with reference to speed and that is in the question asked by the plaintiff of the defendant, "What's the hurry?" This overlooks the testimony that when plaintiff would look at the speedometer, defendant would slow down and then speed up. It is inferable that this was a repeated process.

Defendant further argues that there was no time for him to act between the warning and the accident. There was obviously ample time for defendant to have observed the audible and visible requests to slow down. He did not do so. There was also a distance of some 3 or 4 blocks of travel in which defendant could have observed the demand to get over on the right side of the road. Defendant did not do so.

There is evidence that the accident happened quickly, but that relates to the time between the observation of the truck and the impact. During that time defendant did put on his brakes, but he did not turn to the right. The applicable rule is: "The emergency rule cannot be successfully invoked by either party in a negligence case unless there is competent evidence to support a conclusion that a sudden emergency actually existed, and then it cannot be successfully invoked by one who has brought that emergency upon himself by his own acts or who has not used due care to avoid it." Coyle v. Stopak, 165 Neb. 594, 86 N. W. 2d 758.

In Komma v. Kreifels, 144 Neb. 745, 14 N. W. 2d 591, we used language applicable here: " 'What amounts to gross negligence in any given case must depend upon

the facts and circumstances. What would amount to gross negligence under certain circumstances might, under different circumstances, be even slight negligence. Ordinarily, the question of negligence, whether slight or gross, is one of fact. If the evidence respecting it is in conflict and is such that ordinary minds might draw different conclusions therefrom, then a question of fact is presented for the jury to determine.'

"It is apparent that no one act of the defendant can be separated from the whole of these acts and held to be the independent cause of this accident. Under these circumstances each act is not to be segregated and weighed separately to determine whether or not it constituted gross negligence. The several acts are to be considered as a whole. While each of several acts, standing alone, may not exceed the bounds of ordinary negligence, yet, taken together, they may establish gross negligence. In such cases, it is for the jury to determine whether a defendant is guilty of gross or ordinary negligence. A verdict should not be directed nor a cause of action dismissed unless a court can definitely determine that the evidence of defendant's negligence, when taken as a whole, fails to reach that degree of negligence that is considered gross."

Our citation there was Thompson v. Edler, 138 Neb. 179, 292 N. W. 236. There we held: "It must be borne in mind, always, that no decision on gross negligence can constitute an absolute precedent in any other case. Each case necessarily differs somewhat in its particular facts and circumstances, and in the composite which results from them."

We re-examine and restate the rules that fix the area of determination accorded to a jury and the area of determination reserved to the courts in this class of cases.

We start with an act of the Legislature enacted in 1907. Laws 1907, c. 48, § 2, p. 192, now § 74-704, R. R. S. 1943. It applied to railway companies. It ameliorated

contributory negligence as a bar to recovery and provided for recovery of a comparative negligence judgment under certain circumstances. That provision concluded with these words (as it does now): "* * * all questions of negligence * * * shall be for the jury."

The statute was before this court for construction 6 years later in Disher v. Chicago, R. I. & P. Ry. Co., 93 Neb. 224, 140 N. W. 135. It was there contended that the statute took all questions of negligence from the court and made it a function of the jury. We held: "While this clause is declaratory of the existing rule, we think that at the time of its enactment in positive form the legislature had in mind the tendency of some courts to remove such questions in close cases from the jury, and that it was intended to extend rather than to limit the duty of the trial court to submit the same. We are not able, however, to adopt the construction for which the appellant contends, and hold that in every case the evidence must go to the jury, regardless of its legal effect. * * * We are satisfied that in a proper case, where the evidence or lack of evidence is so clear that reasonable minds could not differ, the power is with the court to direct a verdict; but in all other cases under this statute the issues must be left to the jury." The syllabus point is: "In a case arising under the employers' liability act, where the existence of negligence * * * is a matter at issue, a court is entitled to direct a verdict where the lack of evidence of negligence * * * is so clear that reasonable minds cannot differ as to its legal effect; but in all other such cases the issues must be left to the jury. * * * Ordinarily, wherever there is room for difference of opinion upon these questions, they must be submitted to the jury."

That decision was filed February 25, 1913. The Legislature was then in session. It proceeded promptly thereafter to enact with an emergency clause Laws 1913, c. 124, § 1, p. 311, now section 25-1151, R. R. S. 1943. The act adopted the doctrine of comparative negligence. It

followed, quite similarly, the language of the 1907 act. It, too, provided "and all questions of negligence * * * shall be for the jury." So the 1913 Legislature adopted the exact language of the 1907 act as to the area of determination of the jury immediately following the holding of this court defining the scope of the meaning of the provision.

In McCarthy v. Village of Ravenna, 99 Neb. 674, 157 N. W. 629, in a negligence action, we applied the holding in the Disher case to the construction of the 1913 general act. We thereby gave to the quoted language in the 1913 act the same meaning that we had previously given to the same language in the 1907 act.

We do not find further reference to this particular provision of the statute (§ 25-1151, R. R. S. 1943) in our subsequent decisions except in Lewis v. Rapid Transit Lines, 126 Neb. 158, 252 N. W. 804, where we held: "Our statute provides that all questions of negligence are for the jury. Comp. St. 1929, sec. 20-1151. This is all inclusive except as to such instances where the court can say as a matter of law that no negligence has been established as against some certain party."

The Disher case, *supra,* was cited with approval in Bauer & Johnson Co. v. National Roofing Co., 107 Neb. 831, 187 N. W. 59; Haffke v. Missouri P. R. R. Corp., 110 Neb. 125, 193 N. W. 257; Day v. Metropolitan Utilities Dist., 115 Neb. 711, 214 N. W. 647; and in Burry v. Interstate Transit Lines, 136 Neb. 695, 287 N. W. 66. In none of these cases do we find any withdrawal from the basic holding in the Disher case.

In Thompson v. Edler, *supra,* we had the question of the sufficiency of the evidence to support a finding of gross negligence under the automobile guest statute. We there held: "In an action for gross negligence under the automobile guest statute * * *, where there is adequate proof of negligence, a verdict should be directed for defendant only where the court can clearly say that it fails to approach the level of negligence in a very

high degree under the circumstances. In all other cases, it must be left to the jury to determine whether. it amounts to gross negligence or to mere ordinary negligence."

This holding was directly followed in Komma v. Kreifels, *supra;* in Pavlicek v. Cacak, 155 Neb. 454, 52 N. W. 2d 310; in Bishop v. Schofield, 156 Neb. 830, 58 N. W. 2d 207; and in Paxton v. Nichols, 157 Neb. 152, 59 N. W. 2d 184.

In Paxton v. Nichols, *supra,* we held: "A verdict should not be directed, or a cause of action dismissed, or a judgment entered notwithstanding the verdict, unless the court can definitely determine that the evidence of defendant's negligence, when taken as a whole, fails to reach such degree of negligence that is considered gross."

Although we started using the expression "reasonable minds" cannot differ, and have otherwise used such expressions as "clearly say" and "definitely determine," yet all measure up to the same exacting test that must be applied before a court may refuse to submit a cause to a jury or set aside a jury's verdict. "In all other cases" the issue is for the jury to determine.

Beginning, then, with the enactment of the cited statutes down to the present time we have held that where the evidence of negligence falls within the area where reasonable minds can differ as to whether or not it establishes gross negligence then the determination of that question is for the jury and, absent prejudicial error otherwise, the judgment of the jury must prevail. It is only in those cases where reasonable minds cannot differ on the issue that it becomes a question of law for the court. As we said in Thompson v. Edler, *supra:* "Courts cannot hesitate in directing a verdict where the conviction is clear that negligence in a very high degree is not present."

If it be said that these rules may result in different verdicts under somewhat comparable circumstances, then the answer is that the jury has done so in the ex-

ercise of a power given it by law. We said in Thompson v. Edler, *supra:* "If the tapeline of past decisions seems at times to be somewhat inaccurately applied, and the processes of logic to be a bit variable in their result, this may be largely because the observer is looking at the facts in isolation and not in context." Something of that reasoning need be applied to juries' verdicts as well as to decisions of courts.

As we held in Komma v. Kreifels, *supra,* so we hold here that: "Here the jury were not bound to find that defendant's acts were negligence in a very high degree, but a jury question was in our opinion presented as to whether or not, under the circumstances here, the things which defendant did and failed to do amounted to negligence in a very high degree, i.e., gross negligence. * * * The trial court erred in dismissing plaintiff's cause."

The judgment of the trial court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

WENKE, J., participating on briefs.