## OMA LESENEY v. STATE.

No. A-2270.   Opinion Filed March 31, 1917.

(163 Pac. 956.)

**HOMICIDE—Instruction—Manslaughter in First Degree.** Where the indictment charges, and the evidence clearly shows, that the accused is guilty of murder or nothing, it is error for the court to instruct the jury upon manslaughter in the first degree; for in such cases, if the accused is guilty, the law fixes no other punishment for the crime than death or imprisonment for life. If, on the other hand, the accused is not guilty, nothing less than a complete vindication can meet the ends of justice; and the jury should not be permitted to deprive the accused of the benefit of a reasonable and well-founded doubt as to his guilt of murder by a compromise.

*Error from District Court, Stevens County;*
*Frank M. Bailey, Judge.*

Oma Leseney was convicted of manslaughter in the first degree, and she brings error. Reversed and remanded.

*Hamon & Ellis,* for plaintiff in error.

*R. McMillan,* Asst. Atty. Gen., for the State.

BRETT, J.   In this case plaintiff in error, Oma Leseney, was tried for murder; it being charged that she, in connection with others, poisoned her former husband, Joseph H. Howard, by willfully, knowingly, purposely, and maliciously administering arsenic.   There was no allegation in the indictment, or attempt, either on the part of the state or the plaintiff in error, to prove that arsenic was negligently or recklessly administered by the plaintiff in error to the deceased.   But the state's theory was that the poison was willfully and purposely administered.   And the theory of the plaintiff in error was that her husband was not poisoned at all.   And under these conditions it is our judgment that the plaintiff in error was guilty of murder or nothing.   If the state's theory was true, then there could be no middle ground, no excuse, no extenuation, no palliation, no mitigation. If on the other hand, it was not true, then nothing less than a complete vindication could meet the ends of justice.

But the learned trial judge, over the protest and objection of the plaintiff in error, gave an instruction on manslaughter in the first degree; and the jury found th plaintiff in error guilty of manslaughter in the first degree, and fixed her punishment at seven years in the penitentiary.   The giving of this instruction is assigned as error; and, as above indicated, we think, the assignment is well taken; for either the state or the plaintiff in error, one or the other, by this verdict has been cheated.   If the plaintiff in error is guilty, no other punishment is prescribed by law for her crime than death or imprisonment for life.   If, on the other hand, she is not guilty, or if the jury entertained a reasonable and well-founded doubt of her having committed the atrocious

crime of which she was charged, then she was entitled to an acquittal at their hands. Under this record there is no middle ground, and it was the duty of the jury to bring in either a verdict of murder or an acquittal. But by the unauthorized latitude given them in this instruction they might, and they did, do neither.

It can hardly be believed that, if the jury had believed beyond a reasonable doubt that the plaintiff in error was guilty of deliberately poisoning the man to whom she had plighted troth, they would have hesitated in finding her guilty of murder. And the very fact that they did not do this clearly indicates that they had a doubt upon that question. And, that being true, the plaintiff in error was, under the law, entitled to the benefit of that doubt, and should not have been deprived of it by a compromise. She had a right to stand upon the battle ground selected by the state, and demand that she either be convicted of the crime charged, and for which she had been called into court to answer, or acquitted, since there was no evidence tending in the least to prove a lesser degree of the crime. The man who lies in ambush and shoots his victim or the person who deliberately administers poison can be guilty of nothing less than murder; and under such conditions no set of crimes should be submitted to the jury from which they might carve the offense. But the question for the jury under such circumstances is whether or not the accused is guilty of the offense charged, and not what the degree of the offense is; for willful poisoning and shooting from ambush should be distinguished from other forms of homicide, for their very nature precludes every other hypothesis than that of deliberation and premeditation.

In *Dresback v. State,* 38 Ohio St. 365, the court says:

"The charge, in effect, told the jury that their duty would be fulfilled in case they found the accused guilty by returning a verdict for murder in the first or second degree, or for manslaughter. The evidence against the accused tended to prove that he purposely killed his wife by administering to her poison; and it tended to prove no other grade of offense. If the jury found him guilty, it was their duty to find him guilty of murder in the first degree; but if the charge was not proved, he was entitled to an acquittal."

In *State v. Bertoch,* 79 N. W. 378, the Supreme Court of Iowa, passing upon the question involved in the case at bar, says:

"It was the duty of the jury, if they entertained a reasonable, well-founded doubt of the defendant's guilt of murder in the first degree, to have acquitted him; for, as we have seen, he could not be guilty in any less degree. The jury must have entertained a reasonable * * * doubt as to the defendant's guilt as charged, that is, guilt in the first degree; otherwise it would not have acquitted him of that degree and convicted him of the second. Now, as we have seen, if the jury had such a doubt as to his guilt in the first degree, the defendant was enittled to have that doubt resolved in his favor, and to be acquitted. By the unauthorized latitude given in the instructions the defendant was deprived of the benefit of this doubt. We have read this record with the care that the importance of the case demands and while, in view of our conclusions, we should not discuss the evidence, nor express any view concerning it, we will say that our reading impresses us with the conviction that the defendant was materially prejudiced by the latitude given to the jury in the instructions. They give the jury the right to convict in a lower degree, when, possibly

under proper instructions, and the doubt which they seem to have entertained, they would have acquitted."

In *Pliemling v. State,* 46 Wis. 516, 1 N. W. 283, the Supreme Court of Wisconsin holds· that:

"Looseness and latitudinarianism in the construction of criminal law, and in the judicial trials of grave offenses, or compromises of legal principles and of honest judgment, in order to effect some agreement, or to render some verdict in the trial of 'high crimes, or of offenses of any grade induced by whatever influence, must not be tolerated by the courts, and the responsibility in such cases must rest upon the tribunal in which it is practiced or attempted. So far as possible, there should be absolute certainty in the administration of criminal law, and its essential principles will not be perverted or compromised by this court in any case."

And the Supreme Court of California, in *People v. Huntington,* 138 Cal. 261, 70 Pac. 284, says:

"The only position taken by the prosecution was that appellant had caused death while committing a, felony, to wit, producing an abortion, and was therefore guilty of murder. There 'was no pretense that he was guilty of any crime less than murder. But after the evidence had been closed and the case had been argued to the jury upon the theory of murder by abortion, as above stated, the court at the last moment, of its own motion, instructed the jury that appellant might be convicted of manslaughter upon a totally different theory, to wit,. that death did not result from an attempt to produce abortion, or to commit any other crime or unlawful act whatever, but that it resulted while he was doing a perfectly lawful act, that is, treating the deceased medically for a · disease, upon the ground that said lawful act was done 'without due caution or circumspection.' Of course, the general proposition is true that there may be a conviction of manslaughter under an indictment for murder; but that proposition does not justify any kind of a charge

which a court may give upon that subject, regardless of the character and theory of the prosecution in a criminal case. Instructions must be applicable to the facts and features of the case in hand. Under the circumstances of the case at bar, there should have been no instruction on the subject of manslaughter. The only question legitimately before the jury was whether appellant had caused death while attempting to produce abortion. If that was the fact, he was guilty of murder, and there was no element of manslaughter present. But the jury, under the instructions, found him guilty of manslaughter; and he was therefore tried for one crime and convicted of an entirely different crime."

And cases to the same effect might be multiplied, but the doctrine is not alone dependent upon the holdings of the courts, but is sound in reason and essential to the proper administration of justice.

The judgment is therefore reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

DOYLE, P. J., and ARMSTRONG, J., concur.