### SARAH PALMER v. STATE.

No. A-2988—Opinion Filed Feb. 21, 1920.

(187 Pac. 502.)

(Syllabus.)

1.   HOMICIDE—Manslaughter in First Degree—Sufficiency of Evidence. In a prosecution for murder, the evidence reviewed, and held sufficient to sustain the conviction of manslaughter in the first degree.

2.   HOMICIDE—Admissibility of Dying Declarations. Dying declarations, to be admissible, must be made under a sense of impending death, but it is not necessary that the declarant state that he is expecting immediate death. It is sufficient if, from all

the circumstances, it satisfactorily appears that they were made under that sanction.

3. **SAME—Question for Court.** It is the province of the court to determine, in the first instance, the admissibility of declarations offered in evidence as dying declarations, and for the purpose of proving the declarant's sense of impending death, expressions or statements of the deceased are always admissible if made at or about the time the dying declarations were made.

4. **EVIDENCE—Res Gestae—Homicide.** On a trial for murder declarations of the deceased made under such circumstances as will raise the reasonable presumption that they are the spontaneous utterances of thought created by or springing out of the homicidal act, and made so soon thereafter as to exclude the presumption that they are the result of premeditation and design, and without knowledge of which the principal fact might not be properly understood, are admissible as part of the res gestae.

*Appeal from District Court, Okmulgee County;*
*Ernest B. Hughes, Judge.*

Sarah Palmer was convicted of manslaughter in the first degree, and she appeals. Affirmed.

*J. S. Eaton,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *E. L. Fulton,* Asst. Atty. Gen., for the State.

DOYLE, P. J. The plaintiff in error, Sarah Palmer, herein referred to as defendant, was informed against for the crime of murder alleged to have been committed in Okmulgee county September 19, 1916, by shooting with a pistol one Jack Wheeler. The jury found her guilty of manslaughter in the first degree, and fixed the term of her imprisonment in the penitentiary at four years. From the judgment rendered on the verdict an appeal has been duly prosecuted to this court.

It appears from the testimony that defendant and deceased, negroes, lived in a two-room house in the city of

Okmulgee for four or five months preceding the homicide. Between 8 and 9 o'clock in the forenoon on the date alleged defendant shot deceased with a large calibre pistol. The ball entered the right breast and came out in the small of the back below the left shoulder. From the effects of the wound death occurred about 4 o'clock the next day.

The theory of the prosecution appears to have been that the killing was deliberate. The defendant sought an acquittal of the charge against her on the ground that the homicide was accidental.

The proof on the part of the state as to the circumstances of the killing was confined to declarations of the deceased, which evidence was admitted over the objections of the defendant on the ground that no sufficient foundation had been laid, in that it did not appear that they were made under a sense of impending death.

The record shows that preliminary to offering the declarations, in the absence of the jury, the state offered evidence showing the nature of the wounds and at the time blood was gushing from his wounds; that the attending physician told him that he was in bad shape, and that he was liable to die; that if he had any statement to make he had better make it; that deceased talked with difficulty and said he was in an awful shape and that he thought he was going to die; that he was then raised up in bed and made the declarations admitted in evidence. Evidence was then offered on the part of defendant tending to show that deceased did not say at the time of making the declarations that he was conscious of impending death, and that on the next day, shortly before he died, deceased said in response to a question "that he thought he was all right,"

and that at that time he did not say anything about dying.
The court ruled:

"So far as the testimony shows, the declaration is admissible both as a dying declaration and as a part of the *res gestae;* the testimony shows that the statement was made only a few minutes after the shooting, and in all reasonable probability before deceased had time to deliberate and make up a false statement."

The jury was recalled. Three or four witnesses testified that while they were holding him up in bed deceased made statements substantially as follows:

"I got up that morning and went over to town to get some things for breakfast, and on my way over I went through Martha Henderson's yard and spoke to Martha Henderson, and on returning home Sarah accused me of flirting with Martha, accused me of fooling around with her, and I denied it. Sarah went ahead getting breakfast, and I went out and got a bucket of water and came back into the house and sat down to breakfast, and Sarah went into the other room and came back and says, 'I will kill you and I know you won't fool around her,' and she shot me."

Defendant came into the room and said, "Jack, it was an accident," and deceased answered by saying, "Accident, hell."

Counsel for the defendant then moved to strike the testimony on the grounds that it was incompetent and irrelevant, and no proper foundation was laid for the admission of said testimony, either as a dying declaration or as a part of the *res gestae,* which motion was overruled and exception allowed.

The rule is universal that before dying declarations can be admitted in evidence it is essential and is a pre-

liminary fact to be proved by the party offering them in evidence that they were made under a sense of impending death. It is the duty of the court to determine in the first instance the admissibility of declarations sought to be introduced as dying declarations, and the court must pass upon the competency of such evidence as a question of law, or, as some courts hold, as a mixed question of law and fact. In laying the predicate for the admission of dying declarations, the expressions or statements of the deceased are always admissible if made at or about the time the declarations were made, or even if made before or after the making of the declarations. *Morehead v. State,* 12 Okla. Cr. 62, 151 Pac. 1183, Ann. Cas. 1918C, 416. It is sufficient if it satisfactorily appears that they were made under a sense of impending death, whether it be directly proven by the express language of the declarant, or be inferred from his evident danger, or the opinions of medical attendants stated to him, or from other circumstances of the case, such as the length of time elapsing between the making of the declarations and his death. *Poling v. State,* 12 Okla. Cr. 27, 151 Pac. 895, Ann. Cas. 1918E, 663.

We are clearly of the opinion that the statments made by the deceased were properly admitted in evidence as dying declarations. We are also of the opinion that the declaration of the deceased made shortly after the fatal shot was fired was competent and admissible as part of the *res gestae.* No fixed measure of time or distance from the main occurrence can be established as a rule to determine what shall be part of the *res gestae.* Each case must necessarily depend upon its own circumstances to determine whether the facts offered were really part of the same continuous transaction. If the declarations ap-

pear to spring out of the transaction, if they are voluntary and spontaneous, and made at a time so near to it as reasonably to preclude the idea of design, then they are to be regarded as contemporaneous. *Offitt v. State*, 5 Okla. Cr. 48, 113 Pac. 554.

"And again the rule is well stated that if such declarations 'are made under such circumstances as will raise the reasonable presumption that they are the spontaneous utterances of thought created by or springing out of the transaction itself, and so soon thereafter as to exclude the presumption that they are the result of premeditation and design, they will be admissible as part of the *res gestae*.'" *Moorehead v. State*, supra.

As a witness in her own behalf defendant testified:

"We lived together five months. I thought lots of him, and Jack and I were to get married. I fired the shot that killed Jack Wheeler. I did it accidentally. He came and asked me to cook him a hurry-up breakfast. He said he had to go to court, and when he came back from court he was going to Beggs and was going to carry the gun with him. I fixed breakfast while he shaved. He came into the room with the gun in his hand. I asked him, 'Aren't you ready to eat now,' and he said, 'Well, I have got to get some rags and clean the gun.' I says, 'I would let the gun go and eat,' and he sat down to the table. I walked to the table and asked him, 'Jack, what are you going to do with this gun,' and picked the gun up. It struck the lamp and went off. I do not know whether he had the gun cocked or not. I picked the gun up carelessly without any idea in my mind of firing the gun. When the gun went off he jumped up straight from the table and hollered, 'Oh, I'm shot!' I says, 'I will call a doctor,' and I led him from the kitchen into the bed room and told him to sit on the bed. I ran out of the kitchen door. About half a block I met Mr. Morris, and ran into his house and says, 'What is Dr. Berry's number; I want to call him quick.

Jack is shot.' I took the phone down and told information to call some doctor, I did not care who, and then ran back to the house. Mr. Morris and his brother William Morris were leaning over him; then the doctors came and called for some water and a towel, and Mr. Pettit said, 'How did it happen?' I said, 'I shot him accidentally.' I says, 'He did not tell you I did not shoot him accidentally?' and he said, 'Yes; he did;' and I said, 'Let me go and hear him.' He told me to stay out and I did so."

Counsel for the defendant objected to and took exceptions to the instructions given by the court submitting the issue of manslaughter in the first degree. It is now urged that there was no evidence tending to show manslaughter in the first degree, and that under the evidence in the case the jury should have returned only one of two verdicts, namely, guilty of murder, or not guilty.

The charge of the court contains 16 instructions. The court instructed the jury as to the crime charged and the plea entered, and gave the instructions excepted to as follows:

No. 6: "The jury are instructed that homicide is manslaughter in the first degree when perpetrated without a design to effect death and in the heat of passion, but in a cruel and unusual manner or by means of a dangerous weapon, unless it is committed under such circumstances as constitute excusable or justifiable homicide."

No. 7: "You are instructed that both murder and manslaughter are unlawful killings. The distinction is that in murder there is a premeditated design to effect death, while in manslaughter there is no premeditated design. If there is a premeditated design to effect death, homicide is murder, no matter how angry the slayer may be at the time of the homicide."

No. 8: "The jury are instructed that homicide is excusable when committed by accident or misfortune or in the doing of any lawful act by lawful means, with usual and ordinary caution and without any unlawful intent."

No. 9: "The jury are instructed that the defendant in this case is presumed to be innocent of the crime charged in the information, and this is a presumption of law that remains with her and is thrown around her for her protection up to the moment when the killing is proved or admitted. When the killing is proved or admitted by the defendant, and the plea of accidental killing is interposed, as in this case, it then devolves upon the defendant to show any circumstances of mitigation to excuse or justify it by some proof strong enough to create in your minds a reasonable doubt of her guilt of the offense charged, unless the proof on the part of the state shows that the defendant was excusable in committing the act."

No. 10: "The jury are instructed that, if they find and believe from the evidence in this case beyond a reasonable doubt that the defendant, Sarah Palmer, in the county of Okmulgee, state of Oklahoma, on or about the 19th day of September, 1916, or at any time before the filing of the information herein, did, in the manner and form, and with purpose and intent and design charged in the information, shoot and kill the deceased, Jack Wheeler, and that said killing when perpetrated was done with a premeditated design to effect the death of said Jack Wheeler, and that the said defendant unlawfully and with such premeditated design to effect the death of the said Jack Wheeler, did shoot and kill him, the said Jack Wheeler, then it will be your duty to find the defendant guilty as charged in the information. On the other hand, if there remains in your mind a reasonable doubt as to the existence of any material fact necessary to constitute the crime of murder as herein instructed, then it will be your duty to acquit the defendant unless you should find that she is guilty of manslaughter in the first degree as hereinafter instructed."

No. 12: "Gentlemen of the jury, if after a consideration of all of the evidence in this case there remains in your mind a reasonable doubt as to whether the defendant is guilty of the crime of murder as herein instructed, then you may next inquire whether or not she is guilty

of manslaughter in the first degree. Therefore, if you find and believe from the evidence in this case beyond a reasonable doubt that the defendant, in the county of Okmulgee and state of Oklahoma, on or about the 19th day of September, 1916, did unlawfully shoot and kill the deceased, Jack Wheeler, but that such act of killing was perpetrated without a design to effect the death of the deceased, Jack Wheeler, and in the heat of passion, but in a cruel and unusual manner or by means of a dangerous weapon, then you will find the defendant guilty of manslaughter in the first degree and so say by your verdict. On the other hand, if you have any reasonable doubt in your minds as to whether the defendant is guilty of either murder or manslaughter in the first degree as herein instructed you, then it will be your duty to acquit the defendant."

No. 13: "Gentlemen of the jury, if under these instructions you should find the defendant guilty of the crime of manslaughter in the first degree, you may proceed to fix her punishment, which you will assess at imprisonment in the penitentiary for a term of not less than four years."

No. 14: "Gentlemen of the jury, you are instructed that the defendant in this case admits that the deceased met his death from a gunshot wound received at the time and place alleged, but says that the shooting was accidental. You are therefore instructed that, if you believe from the evidence that the shooting was accidental, or if the evidence in the case tending to show that the same was accidental is sufficient to create in your minds a reasonable doubt as to whether said shooting was intentional, then in such case the homicide was excusable, and in either case it will be your duty to acquit the defendant."

While we think the evidence for the state tended to prove that the killing was deliberate and was amply sufficient to support a verdict of murder, the testimony of the defendant and other facts and circumstances in evidence presented the question as to whether the homicide

was perpetrated without a design to effect death. Considering the fact that defendant and deceased were not husband and wife, but were sustaining that relation, and that defendant accused the deceased of flirting or fooling that morning with another woman, it may be inferred that in a fit of jealousy she picked up the gun and shot him. However, it may be she did not shoot with intent to kill, but only to frigthen, or, at most, to inflict bodily injury.

The evidence also tends to show that the homicide was perpetrated without a design to effect death by defendant while engaged in commission of a misdemeanor; that is, pointing a pistol, whether loaded or not, at any other person. It was therefore the duty of the court to instruct the jury upon the law of manslaughter in the first degree. *Kent v. State,* 8 Okla. Cr. 188, 126 Pac. 1040.

In a prosecution for murder, the court should submit the case to the jury for consideration upon every degree of homicide which the evidence in any reasonable view of it suggests; and, if the evidence tends to prove different degrees, the law of each degree which the evidence tends to prove should be submitted to the jury, whether it be requested on the part of the defendant or not. *Cannon v. Territory,* 1 Okla. Cr. 600, 99 Pac. 622.

There are other assignments of error, which we have examined and found to be without merit. A careful examination of the record convinces us that defendant has no substantial grounds of complaint, either of the rulings of the court or the verdict of the jury. Wherefore the judgment of the lower court is affirmed.

ARMSTRONG and MATSON, JJ., concur.