## BOB HARPER v. STATE.

No. A-3351.   Opinion Filed Oct. 1, 1921.
(200 Pac. 879.)

(Syllabus.)

1. **Jury—Qualification of Juror—Opinion as to Guilt.** Where a juror may at one time have had an opinion as to the guilt or innocence of a defendant, based upon what he heard or read, but has no such opinion at the time of the trial, held, under the facts in this case, that the juror was qualified.

2. **Jury—Summoning Talesmen After Exhaustion of Panel.** Where the regular panel has been exhausted, held proper to summons talesmen to complete the jury.

3. **Appeal and Error—Harmless Error—Remarks of Court—Separation of Jury.** Where both sides agree that the jurors may separate before the cause is finally submitted to them, held, there was no error in permitting them to do so, and that the remarks of the court relative thereto were not prejudicial.

4. **Trial—Remarks of County Attorney Held Proper.** Certain remarks of the county attorney, made during the progress of the trial, held not prejudicial.

5. **Appeal and Error—Findings Against Jurors' Misconduct not Disturbed.** The findings of the court concerning alleged misconduct of certain jurors, urged as grounds for a new trial, under the circumstances in this case will not be disturbed.

6. **Trial—Court's Reprimand of Bailiff in Jury's Presence.** Certain remarks of the court in reprimanding a bailiff in the presence of the jury held proper.

7. **Homicide—Instruction on Manslaughter in Murder Trial.** Where the defendant is charged with murder, an instruction defining manslaughter in the first degree is proper where the evidence on both sides is conflicting concerning their motives, their aggressiveness, and elements of self-defense.

Appeal from District Court, Pittsburg County; R. W. Higgins, Judge.

Bob Harper was convicted of manslaughter in the first degree and sentenced to 14 years' imprisonment in the state penitentiary, and he appeals. Affirmed.

A. S. McKennon, Harris & Lackey, and Wilkinson & Scott, for plaintiff in error.

S. P. Freeling, Atty. Gen., and W. C. Hall, Asst. Atty. Gen., for the State.

BESSEY, J.   Bob Harper, plaintiff in error, hereinafter denominated the defendant, on November 18, 1917, was convicted of manslaughter in the first degree, for the killing of Ab Lawrence at Hartshorne, Pittsburg county, Okla., on the night of August 15, 1917, and his punishment was by the jury fixed at imprisonment for 14 years in the state penitentiary.

The defendant, Bob Harper, had been living in Hartshorne for about 20 years, and was formerly chief of police of that town.   At the time of the homicide in issue here he was engaged in conducting a soft drink establishment in a room partially occupied by a billiard hall conducted by other parties, on the main street of Hartshorne.   Ab Lawrence, at the time he was killed, was in the employ of the Rock Island Coal Company, working in the capacity of hoisting engineer in one of their mines near Hartshorne.   He, too, had been a resident of Hartshorne for a number of years, and at the time of the homicide both the defendant and the deceased were residing near the business portion of the town.

For some reason, not made clear by the testimony, there had been ill feeling between the parties for some months, and the deceased, a short time prior to the homicide, had assaulted the defendant.   There is evidence tending to show that each of the parties had made threats of violence towards the other.

On the night in question, just about dark, these two men met on a frequented path leading from the railway right of way to the main business street of Hartshorne, going in opposite directions.   The deceased was armed with a 32, double-action automatic pistol, and the defendant was armed with a 45, single-action Colt's revolver.   Numerous witnesses testified that they heard a number of shots fired in rapid succes-

sion, and that the sound of the reports of the firearms indicated that one was of larger caliber than the other. The evidence is conflicting as to which of the pistols was fired first. Upon this question there were 25 or more witnesses whose testimony was heard, and from the verdict of the jury we assume that the jury was convinced beyond a reasonable doubt that the defendant was the aggressor, or, if not the aggressor, that the killing was without justification.

The errors complained of by the plaintiff in error may be summarized as follows:

(1). That the court erred in overruling defendant's challenge to Juror J. E. Elliott.

(2). That the court erred after the regular jury panel was exhausted in directing the sheriff to select persons for jury service in this case from the residents of the county who might be found in the vicinity of McAlester, where the case was being tried, over the objections of the defendant, who asked that the names of the talesmen be drawn from the jury box.

(3). That the court erred in asking the attorneys, in the presence of the jury, if they desired that the jury should be kept together during the progress of the trial.

(4). Alleged misconduct of the county attorney in propounding questions to jurors, and, in his opening statement to the jury and in the examination of witnesses, making statements inferentially indicating that the defendant had interfered with the marital relations of the deceased and had ruined his home.

(5). Misconduct of certain jurors during the progress of the trial.

(6). Misconduct of the court in his remarks reprimanding a deputy sheriff for his conduct, in the presence of the jury.

(7). Error of the court in defining manslaughter in his instructions to the jury.

First. In relation to the qualifications of Juror J. E. Elliott, this juror testified that he had heard about this homicide soon after it occurred, and that he had, or might have had, an opinion at that time, but that he did not give the matter much thought or any serious consideration, and that he had no opinion at the time of the trial, and believed that he could give the defendant a fair and impartial trial, according to the law and the evidence. From an examination of this part of the record we believe that this juror was qualified. Be that as it may, it appears that the defendant waived his ninth peremptory challenge. If defendant was aggrieved by the bias or alleged incompetency of this juror, he should have challenged him peremptorily.

Second. After the jury panel was exhausted the court made the following announcement:

"The attorneys will please come up to the bench. (Attorney for state and defendant called to one side by the court.) What I want to speak to you about is this: It has been the unbroken rule and precedent of this court as long as I have been judge, and of Judge Cole, who preceded me, to send the bailiff out to bring in talesmen where the panel is not sufficient, and I do not believe that it is my duty to depart from this rule. It would be questioned if I should do so. It is my intention, feeling that Mr. J. D. Ray is a suitable person in every way, he has my confidence as to his honesty and integrity, apparently had Judge Cole's confidence, and if there be any reason why he should not act in that capacity I would be glad to know it, if he should not bring in talesmen, if there is any reason against it, but I would want the reason given."

The defendant objected to the selection of talesmen to complete the jury and objected to J. D. Ray as not being a proper person to make the selection, which objection was by the court overruled. The court then spoke as follows:

"Mr. Ray, will you come forword? You have been appointed by the sheriff bailiff of this court and approved by the court, and I find now that the jury panel is not sufficient, is insufficient, and it is necessary to bring in some other jurors to try this case. I authorize and empower you to bring in eight men possessing the qualifications of petit jurors, and I want you to bring in honest men, men of good moral character, men that are good citizens, and be careful about getting any one, picking up any one, that may be about the courthouse. Use your best judgment, I am not dictating to you one way or the other, but use your best judgment to get men to be brought in, true and good men that know absolutely nothing about the case and have no interest whatever in the case. Around the courthouse it may be that parties you would pick up would have some interest in the case one way or the other. Try and bring in men of such high standing that all parties to this suit will know that we have done our work well, and I will give you 30 minutes to have them here."

Section 5000, R. L. 1910, provides:

"When the requisite number of jurors cannot otherwise be obtained, the sheriff shall select talesmen to supply the deficiency from the bystanders, or the body of the county, as the court may direct."

After an intermission the bailiff, Mr. Ray, reported into court with eight talesmen, who were sworn and qualified to answer questions touching their qualifications. From the prospective jurors so brought in Jurors Walker and Duncan were accepted by both the state and the defendant, and the defendant and the state both waived their ninth peremptory challenge, indicating that the defendant was at that time satisfied with the personnel of the jury. We see no objections to selecting a jury in the manner followed by the trial court in this case; in fact, our statute provides for such selection, in the discretion of the court. A jury of impartial men is all that one charged with crime can demand, and when such is procured the law is satisfied, and every constitutional right

given to him for his protection has been fulfilled. Brown v. State, 14 Okla. Cr. 609, 174 Pac. 1102; Warren v. State, 6 Okla. Cr. 1, 115 Pac. 812, 34 L. R. A. (N. S.) 1121.

The third assignment of error does not seem to be supported by the record. At page 602 of the record the trial court says:

"That after the jury was impaneled and before the jury separated the court called all the attorneys to one side and asked if it was their desire that the jury be kept together, or that the jury be permitted to separate. The attorneys representing the defendant asked to consult among themselves, retiring to the judge's chambers. That afterwards they returned and said that there was no objection. The county attorney, but not in the hearing of the jury, stated that he did not desire the jury to be kept together. I took that precaution for fear some attorney might say that they didn't object to the jurors not being kept together and for fear that the jury might charge it up to the other side that did require them to be kept together, is the reason why I called the attorneys to one side."

However this may be, there would be no impropriety in a judge's making inquiry in open court as to whether the parties desired the jury to be kept together. In this case it seems that the court took the precaution to make the inquiry privately, so as to obviate all question of prejudice. Horn v. State, 13 Okla. Cr. 354, 164 Pac. 683.

Fourth. It is next contended that there was prejudicial error in the conduct of the county attorney in repeatedly making suggestions indicating that there were improper relations between the defendant and the wife of the deceased. The testimony shows that immediately after the shooting, while the deceased lay prostrate upon the earth, mortally wounded, he stated that the defendant had ruined his home and then shot him all to hell. This statement was admissible as a part of the res gestae, and was susceptible of the interpretation placed

upon it by the county attorney. The trial court, however, at numerous times admonished the jury that the question of whether or not the defendant was guilty of improper relations with the wife of the deceased had nothing to do with this case, and that such facts, if believed by the jury, would not afford either the deceased or the defendant any justification for making an assault upon the other. Offitt v. State, 5 Okla. Cr. 48, 113 Pac. 554.

Fifth. To the affidavits filed in this case attempting to impeach the conduct of certain jurors during the progress of the trial, alleging that certain jurors mingled with certain of the state's witnesses and conversed with them, the state introduced counter affidavits, and the court, in passing upon the motion for a new trial, tried the issue of fact raised by these affidavits. The record shows by a clear preponderance of the evidence that the jurors were guilty of no misconduct, and that the defendant was not prejudiced by any act of the jurors. The alleged misconduct was before the cause was finally submitted to the jury, and under an agreement of counsel that the jurors might separate. Burns v. State, 8 Okla. Cr. 554, 129 Pac. 657.

Sixth. In the progress of the trial information came to the trial court that the deputy sheriff had taken the defendant to a hotel dining room where some of the jurors were being served with meals. The court, in the presence of the jury, told the deputy sheriff that this was improper, concluding his remarks by saying:

"You must not hold it against the defendant or the state of Oklahoma, but I thought, gentlemen, I would like this explained to you, and what I say to you the attorneys representing the defendant and the attorneys representing the state will agree with me in, for they don't want anything but a fair trial. You gentlemen will have to be kept together from now on. Gentlemen of the jury, charge it up to the court,

but do not charge the holding of you gentlemen together to any of the parties to this action. Gentlemen, I thought I owed this duty to the defendant and to the state.''

We think the court did his duty in making the statement he did, and that neither party could have been prejudiced thereby. There was nothing in these remarks indicative of partiality or unfairness.

Seventh. It is contended by the defendant that under the evidence he was either guilty of murder or should have been acquitted on the ground of self-defense, and that the submission of an instruction on manslaughter was error, under the holdings of this court in the case of Leseney v. State, 13 Okla. Cr. 247, 163 Pac. 956. In the first place, we do not so interpret this evidence. The evidence touching on motive, aggression, and justifiable acts of self-defense on the part of both parties was conflicting, fully justifying the submission of an instruction on manslaughter in the first degree. Even if it were conceded that the evidence seemed to indicate that the defendant should have been found guilty of murder or acquitted on the ground of self-defense, this court has since refused to follow the rule laid down in the case of Leseney v. State, supra, but upon this question has followed the rule announced in the case of Irby v. State, 18 Okla. Cr. 671, 197 Pac. 526, and cases therein cited. Quoting from this opinion:

''It is contended that under the evidence the defendant should either have been convicted of murder or acquitted, and that no instructions for manslaughter in the first degree should have been given. In support of this contention we are cited by counsel for defendant to Leseney v. State, 13 Okla. Cr. 247, 163 Pac. 956, in which it was held reversible error to instruct on manslaughter in the first degree when the evidence tended to show that the defendant was guilty of murder alone, and there was no evidence to support the charge of manslaughter in the first degree. In all other cases it has been uniformly

held by this court that, even if the evidence did not warrant an instruction for manslaughter, it is an error in the defendant's favor of which he has no cause to complain. Under the provisions of the Code of Criminal Procedure: 'The jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, or of an attempt to commit the offense.' Section 5923, Rev. Laws (1910). * * *

"It is the province of the jury, if the defendant is found guilty, to determine and fix the degree of their verdict, and it has been uniformly held by this court that, if the jury in a homicide case find the defendant guilty of a lower degree, where the law and the facts make it murder, it is an error in favor of the defendant of which he cannot complain."

From the record as a whole it appears that the trial court, at every stage of the proceedings, accorded to the defendant every safeguard to which he was entitled, and that counsel for the defendant and the county attorney and special counsel for the state skillfully and decorously performed their duties.

We think the defendant had a fair trial, and the judgment of the trial court is affirmed.

DOYLE, P. J., and MATSON, J., concur.