## DOSS SMITH v. STATE.

No. A-3586. Opinion Filed Dec. 19, 1921.
(202 Pac. 519.)

(Syllabus.)

1. Homicide—Instruction on Manslaughter Proper Where Evidence of Motive, Aggression, and Self-Defense Conflicting. In a homicide case, where the evidence touching on motive, aggression, and justifiable acts of self-defense are conflicting, the giving of an instruction on manslaughter in the first degree is proper.

2. Trial—Instructions as a Whole—Instruction as to Use of Reasonable Means to Avoid Taking of Human Life Held Proper. An in-

struction to the effect that an accused who was threatened with danger to his life should use all reasonable means to avoid taking human life, except that, under the circumstances here, he is not bound to retreat, considered in connection with other instructions given, held not error. .

Appeal from District Court, Greer County; T. P. Clay, Judge.

Doss Smith was convicted of manslaughter in the first degree and sentenced to serve a term of 15 years' imprisonment in the penitentiary, and he appeals. Affirmed.

Garrett & Thacker and H. Milton Thacker, for plaintiff in error.

S. P. Freeling, Atty. Gen., and W. C. Hall and E. L. Fulton, Asst. Attys. Gen., for the State.

BESSEY, J. Doss Smith, plaintiff in error, in this opinion referred to as the defendant, by information filed in the district court of Greer county on August 28, 1918, was charged with the murder of Herman Wilfong on August 19, 1918. At the trial, on January 22, 1919, the jury rendered a verdict finding the defendant guilty of manslaughter in the first degree, without fixing the punishment. On the 26th of January, 1919, the court rendered judgment upon the verdict, sentencing the defendant to confinement in the penitentiary at Granite for a term of 15 years. From this judgment and sentence the defendant has appealed to this court.

It appears that before and at the time of this homicide the defendant lived about 12 miles east of Mangum; that he was a man about 44 years of age; living on a farm with his family; that the deceased, Herman Wilfong, lived with his uncle, G. N. Hunt, on an adjoining farm; that Mrs. Lulu Gilham owned and resided upon another farm just across the road from the premises of the defendant; that the defendant at one time had been employed by Mrs. Gilham and had raised one or more

crops on the Gilham premises, and that Mrs. Gilham had permitted the defendant to take, keep, and use one of her horses on his own premises; that some time prior to the homicide Mrs. Gilham dispensed with the services of the defendant and employed Herman Wilfong, the deceased, and that, growing out of these and other circumstances, Mrs. Gilham and the defendant became estranged and were not on friendly terms; that Herman Wilfong became involved in their affairs, causing ill feeling between the defendant and the deceased; and that on one occasion they had a mutual physical encounter, growing out of these disputes. There was some conflicting testimony tending to show that the deceased had threatened the life of the defendant, and also some testimony tending to show that the defendant had made threats towards the deceased.

Testimony on the part of the state was to the effect that the deceased had been employed to help thresh some grain in another neighborhood and had returned home on the evening before the tragedy; that on the morning of the tragedy he and his cousin, Oliver Hunt, after they had eaten their breakfast, were walking along the road adjoining the defendant's field; that it was their purpose and intention to go into a pasture nearby to get some horses that were there feeding; that after they crossed a creek and a bend in the road they first saw the defendant in his field, near the fence along the roadside, but that they did not know who he was; that they proceeded to a point nearly opposite where the defendant was, and that they then recognized the defendant standing there with a revolver leveled at them as they approached; that the defendant said, "Oliver, get out of the way; I'm going to shoot;" and that Oliver replied, "Mr. Smith, we are not going to harm you;" that the defendant again said, "Get out of the way, Oliver; I'm going to shoot;" that both Oliver Hunt and the deceased then ran and the defendant fired four shots in rapid succession, one of which

penetrated the body of Herman Wilfong, from which wound he afterwards died.

The testimony of the defendant, who took the stand in his own behalf, was to the effect that he had gone to a place near the bridge on the public road to see about a water gap, and that he had gone a little distance from the creek and was standing pulling the heads off of some Johnson grass when he first noticed the deceased and Oliver Hunt approaching; that they were walking side by side, and when they got within about 20 steps of the defendant the deceased put his right hand in his pocket and kept looking at the defendant; that when they got up to within 10 steps of the defendant they checked up and stopped, and that the deceased was trying to pull his hand out of his pocket; that he threw his left hand around and was trying to assist in getting his other hand out of his pocket; that the defendant, by reason of the prior threats, believing that his life was in danger, fired four shots from a Colt's automatic pistol; that after he ceased firing the deceased walked away and lay down a little distance from there. There was no proof offered showing that the deceased was armed. Other witnesses for the defendant testified to facts tending to show that the deceased and his companion, Oliver Hunt, knew that the defendant was at the side of the road near the water gap, and that they went to where he was with the intention of provoking a quarrel.

There are 23 assignments of error set out in the defendant's petition in error, but the defendant in his brief has condensed these assignments into 3 propositions, as follows: (1) That the court erred in submitting to the jury an issue of manslaughter in the first degree. (2) Error of the court in the admission and the rejection of testimony. (3) Error of the court in giving instruction No. 16, relative to the plea of self-defense.

It is contended by the defendant that under the evidence he was either guilty of murder or should have been acquitted on the ground of self-defense, and that the submission of an instruction on manslaughter in the first degree was error, under the holdings of this court in the case of Leseney v. State, 13 Okla. Cr. 247, 163 Pac. 956. In the first place, we do not so interpret the evidence in this case. The evidence touching upon motive, aggression, and justifiable acts of self-defense was conflicting, fully justifying the submission of an instruction on manslaughter in the first degree. Harper v. State, 20 Okla. Cr. 43, 200 Pac. 879.

Even if it were conceded that the evidence tended to indicate that the defendant should have been found guilty of murder or acquitted on the ground of self-defense, this court has since refused to follow the rule laid down in the case of Leseney v. State, supra, but upon this question has followed the rule announced in the case of Irby v. State, 18 Okla. Cr. 464, 197 Pac. 526, and cases therein cited.

It is next contended that the court erred in the admission and the rejection of testimony. We have read all of the testimony in this record, and feel that this assignment does not call for any extended treatment. The record nowhere shows that any of the testimony excluded, or any of the testimony admitted over the objections of the defendant, deprived the defendant of any substantial right; in this regard there was, in our judgment, no prejudicial error.

The defendant next urges that the italicized portion of instruction No. 16 is erroneous and prejudicial, as follows:

"In this connection you are told that self-defense under the law is a defensive and not an offensive act, and for a person to avail himself of a plea of self-defense in order to justify a killing it must reasonably appear to him at the time he fired the fatal shot, if you find that he did so fire it, that the act upon the part of the

deceased, by which the defendant seeks to justify the killing, was such an act as made it reasonably appear to him at the time that he was in danger, either of losing his life or of great personal injury being done to him, *and it is the duty of a person threatened with danger to his life or of great personal injury being done him to use at the time all reasonable means apparent to him, under the circumstances, to avoid such danger before taking human life,* except that he is not bound to retreat to avoid such necessity of killing, provided he is in a place where he has a right to be and has done no act upon his part to bring about the attack, or threatened attack, if any, by the deceased."

This instruction must be considered along with instruction No. 14, which treats of the amount or degree of force necessary and apparently sufficient that may be used by the defendant to repel threatened danger, viewed from the standpoint of the person threatened; and also in connection with instruction No. 15, which stated that the defendant had a right to use such force as under the circumstances reasonably appeared to him necessary to repel the attack and avoid injury to himself; and with instruction No. 17, which directs the jury to view the circumstances from the defendant's standpoint, as they reasonably appeared to him. Considering together all of the instructions referred to relating to the defense of self-defense, we think the law on this subject was fairly submitted to the jury.

The judgment of the trial court is affirmed.

DOYLE, P. J., and MATSON, J., concur.