### BEA CLAPP v. STATE.

No. A-9896.   Dec. 10, 1941.
(120 P. 2d 381.)

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and Sim T. Carman, Co. Atty., of Pawhuska, for the State.

Jesse J. Worten and C. K. Templeton, both of Pawhuska, for defendant.

BAREFOOT, P. J. Defendant, Bea Clapp, was charged with the crime of murder in Osage county, was tried, found guilty of manslaughter in the second degree and sentenced to serve a term of two years in the penitentiary, and has appealed.

For reversal of this case it is first contended that the court erred in permitting two witnesses to testify for the state. These witnesses were Dr. R. O. Smith and Thelma Reeves, a nurse, who was employed at the hospital to which defendant was taken immediately after the collision which was the cause of this prosecution, it being contended that Dr. Smith was the physician of defendant and that Thelma Reeves was assisting him, and that under the provisions of the statutes of this state they were incompetent to testify against him. The statute

upon which this contention is based is Oklahoma Statutes 1931, section 272, O. S. A., Title 12, § 385, which is as follows:

"The following persons shall be incompetent to testify: * * *

"6. A physician or surgeon concerning any communication made to him by his patient with reference to any physical or supposed physical disease, or any knowledge obtained by a personal examination of any such patient: Provided, That if a person offer himself as a witness, that is to be deemed a consent to the examination; also, if an attorney, clergyman or priest, physician or surgeon on the same subject, within the meaning of the last three subdivisions of this section."

The evidence of Dr. Smith was that he was the physician of defendant and that the defendant paid him for his services, and that the relationship of doctor and patient existed. Thelma Reeves was the nurse who was under the direction of Dr. Smith. Counsel for defendant thoroughly briefed this question, citing many authorities which substantiate his contention that the two witnesses above named were incompetent witnesses to testify as to the defendant's being under the influence of liquor or that they smelled liquor upon his breath when he was brought to the hospital for treatment. The Attorney General in his brief for the state does not attempt to justify the admission of this evidence as a proposition of law, but contends that, as defendant was charged with the crime of murder and was only convicted of the crime of manslaughter in the second degree, the question as to whether defendant was under the influence of intoxicating liquor at the time charged in the information was eliminated, and that even though this evidence was inadmissible, it was harmless error and defendant cannot complain. Ruling Case Law, vol. 28, p. 535, sec. 124;

Corpus Juris, vol. 70, p. 439, sec. 588; 22 A.L.R. 1217, Note; 79 A.L.R. 1131, note; Chicago, S. B. & L. S. R. Co. v. Walas, 192 Ind. 369, 135 N. E. 150, 22 A.L.R. 1212; New York, C. & St. L. R. Co. v. Shields, 185 Ind. 704, 112 N. E. 762; Owens v. Kansas City, C. C. & S. J. Ry. Co., Mo. App., 225 S. W. 234; Finnegan v. Sioux City, 112 Iowa, 232, 83 N. W. 907; Kling v. City of Kansas, 27 Mo. App. 231; Smart v. Kansas City, 208 Mo. 162, 105 S. W. 709, 714, 14 L.R.A., N.S., 565, 123 Am. St. Rep. 415, 13 Ann. Cas. 932; Howe v. State, 34 Okla. Cr. 33, 244 P. 826; Williams v. State, 65 Okla. Cr. 336, 86 P. 2d 1015; Freeburg v. State, 92 Neb. 346, 138 N.W. 143, Ann. Cas. 1913E, 1101.

The record in this case reveals that defendant was charged with the crime of murder. Under the many holdings of this court, the trial judge presented instructions to the jury on manslaughter in the first degree and manslaughter in the second degree as included offenses. Steeley v. State, 17 Okla. Cr. 252, 187 P. 821; Palmer v. State, 17 Okla. Cr. 220, 187 P. 502; Ballard v. State, 12 Okla. Cr. 277, 154 P. 1197; Kent v. State, 8 Okla. Cr. 188, 126 P. 1040; Welborn v. State, 70 Okla. Cr. 97, 105 P. 2d 187; Cooper v. State, 61 Okla. Cr. 318, 67 P. 2d 981; Tucker v. State, 66 Okla. Cr. 335, 92 P. 2d 595.

It is the duty of the court to determine as a matter of law whether the evidence is such as to justify the submission of both or either of these issues to the jury. This duty may sometimes be extremely difficult, and if there is any doubt about the matter in the mind of the court, the lower degree of the homicide should be submitted for the consideration of the jury. The jury should fix the degree in their verdict. In the instant case there was evidence on behalf of the state to submit to the jury the question of murder. The charge in the information

was: "* * * did then and there while so engaged in the commission of a felony, to wit: the crime of driving an automobile upon a public highway while under the influence of intoxicating liquor. * * *"

Oklahoma Statutes 1931, section 2216, O. S. A. Title 21, sec. 701, provides:

"Homicide is murder in the following cases. * * *

"3. When perpetrated without any design to effect death by a person engaged in the commission of any felony."

Having come to the conclusion that the court was correct under the facts in the instant case in submitting an instruction on manslaughter in the second degree, we now consider the question of the legal effect of the verdict and whether a defendant can except to a verdict of manslaughter in the second degree when charged with murder by reason of the introduction of evidence that was incompetent insofar as the charge of murder was concerned. We shall review some of the prior decisions of this court which establish the rule that has been followed by the court in this jurisdiction. One of the more recent decisions is the case of Walters v. State, 57 Okla. Cr. 424, 48 P. 2d 875, 876. This is a case growing out of an automobile collision. As in the case at bar, the defendant was charged with murder, was convicted of manslaughter in the second degree and sentenced to serve a term of four years in the State Penitentiary. The facts were very similar to the facts here, the state contending that the defendant was under the influence of intoxicating liquor at the time and was driving in a reckless and careless manner on the wrong side of the highway. The evidence was conflicting on both of these propositions, as in the instant case. Defendant contended that, the court having instructed on murder and both degrees of man-

slaughter, the jury did not believe the evidence tending to prove murder or manslaughter in the first degree and that the evidence was insufficient, therefore, to sustain the verdict of manslaughter in the second degree. The court, in an opinion by Judge Edwards, after citing the statutes on murder and manslaughter in the first and second degree, said:

"This section has been many times construed and applied by this court, and it is settled law the jury must fix the degree of the crime of which a defendant is convicted when the court submits to them the different degrees. The verdict will not be disturbed on the ground the jury found defendant guilty of a lower degree of the crime charged than that established by the evidence. It sometimes happens the jury, in arriving at a verdict, does so by a compromise and fixes a lower degree than the undisputed evidence may disclose. Some states have reversed convictions under such circumstances, but, with two exceptions, this court has held the error is in favor of the accused and is not ground for a new trial. The exceptions are: Leseney v. State, 13 Okla. Cr. 247, 163 P. 956, and Lovejoy v. State, 18 Okla. Cr. 335, 194 P. 1087. These cases have been criticized and have not been followed. Irby v. State, 18 Okla. Cr. 671, 197 P. 526; Taylor v. State, 44 Okla. Cr. 58, 278 P. 1117. We are satisfied the law on this point is correctly stated in the following cases: Lytton v. State, 12 Okla. Cr. 204, 153 P. 620; Lazenby v. State, 18 Okla. Cr. 83, 192 P. 1103; Smith v. State, 20 Okla. Cr. 301, 202 P. 519; Wilmoth v. State, 20 Okla. Cr. 453, 203 P. 1055, 21 A.L.R. 590; Inman v. State, 22 Okla. Cr. 161, 210 P. 742; Taylor v. State, supra; Berry v. State, 54 Okla. Cr. 154, 18 P. 2d 285."

The case of Berry v. State, supra, is very similar to the case at bar. Other late cases by this court are Philby v. State, 64 Okla. Cr. 1, 76 P. 2d 412; Wilson v. State, 70 Okla. Cr. 262, 105 P. 2d 789, 792. It is unnecessary to quote from the cases above cited. It is true that the

homicide and manslaughter statutes of this state were in force long before the advent of the automobile. They have been construed both before and since. The construction that has been placed upon them is such that, when a citizen drives an automobile in an unlawful manner in contravention of those statutes and is guilty of culpable negligence as defined in the many cases here cited, is prosecuted by the officers of this state, and a jury returns a verdict of guilty, and the punishment is assessed at a term in the penitentiary, it is as stated in the case of Wilson v. State, supra:

"While an automobile may not be a deadly and dangerous instrument in the hands of a careful and prudent person, but when in the hands of one who handles it in a careless and reckless manner, without regard to the rights of others, it becomes a dangerous instrumentality. The great number of high-powered automobiles upon the streets and highways of this state demand a respect for the rights of others, and a greater responsibility for those who drive them. It is too late to cry 'accident' after one has been guilty of culpable and criminal negligence and others have been injured or killed. The time to think of this is before the collision occurs. Many citizens of this state will, no doubt, be prosecuted in the future, and be convicted, who had no intention of injuring or killing anyone. Why not 'slow down' and 'look and listen' before it is too late."

The statute defining manslaughter in the second degree is Oklahoma Statutes 1931, section 2228, O. S. A. Title 21, section 716, which is as follows:

"Every killing of one human being by the act, procurement or culpable negligence of another, which, under the provisions of this chapter, is not murder, nor manslaughter in the first degree, nor excusable nor justifiable homicide, is manslaughter in the second degree."

In construing this statute it has been held in Clark v. State, 27 Okla. Cr. 11, 224 P. 738:

" 'Culpable negligence' is the omission to do something which a reasonable, prudent, and honest man would do, or the doing of something which such a man would not do, under the circumstances surrounding the particular case."

Also, in Nail v. State, 33 Okla. Cr. 100, 242 P. 270, 272, it is said:

"By no means every instance where one person is injured or killed by a vehicle driven by another do the circumstances constitute a crime. There must be negligence rising to the degree of criminal or culpable negligence. The culpability of a defendant is a question of fact for the jury, and the test is: Do the acts charged as criminal show a degree of carelessness amounting to a culpable disregard of the rights and safety of others, and did said acts cause the death of deceased? If so, it establishes a case of criminal negligence."

See, also, Walters v. State, 57 Okla. Cr. 424, 48 P. 2d 875; Taylor v. State, 44 Okla. Cr. 58, 278 P. 1117; Philby v. State, 64 Okla. Cr. 1, 76 P. 2d 412; Wilson v. State, 70 Okla. Cr. 262, 105 P. 2d 789.

Under these decisions, and applying the evidence, it is not for this court to set aside the verdict of the jury upon a finding of fact where the evidence supports the finding.

The facts as revealed by the record are, briefly, that defendant was an employee of the Cities Service Oil Company; that he was driving on state highway No. 99 north out of the city of Hominy about 8 o'clock p. m., and just before entering the city of Wynona a collision occurred with defendant sideswiping a car coming in the opposite direction and then colliding with a second car coming in the same direction and at about a distance of

80 yards from the first car. There was a head-on collision between defendant's car and the second car. As a result of this Burwyn Aldridge, who was riding in the car beside defendant, was killed.

The evidence as to defendant's being under the influence of intoxicating liquor at the time of the collision was highly contradictory. The state presented two witnesses, Dr. Smith and Thelma Reeves, who testified that when they examined the defendant at the hospital they could smell intoxicating liquor on his breath, and Dr. Smith testified that in his opinion defendant was under the influence of intoxicating liquor. For the reasons above stated, the evidence of these witnesses was incompetent.

The other two witnesses who testified with reference to this matter were two members of the State Highway Patrol. These officers did not arrive at the scene of the accident until some time after the collision had occurred and the parties had been removed to the hospital. After making an investigation at the scene of the accident, these two officers went to the hospital and saw defendant. It was about two and one-half hours after the collision had occurred. They both testified that in their opinion defendant was under the influence of intoxicating liquor. They also testified they could smell whisky upon his breath. They based this upon the actions and conduct of defendant while they talked to him.

Mr. Robertson testified as follows:

"Well, from his actions in general, he talked constantly, seemed different to a normal person, he was constantly calling me back into his room after I had gone in there and talked to him at first. I asked him if he had been drinking and he said he had, and I asked him what, I says 'Not that it makes any difference or a great

deal of difference what you have been drinking, but how much have you been drinking,' and he said, 'I have been drinking Paul Jones whisky, no beer whatsoever;' just the very words that he used. I asked him how much he had had to drink, he said, well, he and his buddies drank about a pint.' I went to leave the room and he called me back, and he asked me my name and I told him it was Robertson, and he called me Robert, I started to leave the room and he would jump up in the bed in a sitting position, with the nurse constantly trying to keep the bandage over his eyes; he called me back in there three or four times, and he asked me Robert if there was going to be any charge filed on him, and I told him just forget about that, I would talk to him later about it."

Defendant produced a number of witnesses who testified in regard to this matter. Several of these witnesses were present at the scene of the collision and assisted in taking the defendant from the car and assisted in carrying him into the hospital, and each of these parties testified they had at no time detected any action on the part of the defendant which caused them to believe he was under the influence of intoxicating liquor, nor could they at any time detect the odor of liquor on his breath or in the car in which he was driving. Other witnesses also testified that they had observed the defendant in the town of Barnsdall about 4 p. m. before the accident occurred at 8:30 p. m., and that at that time he was not under the influence of intoxicating liquor. Several witnesses also testified that they examined the car of defendant at the time of the collision and that they found a spike in the right front tire. The two state patrolmen testified that they examined the car and tire and did not see any spike or nail in it. Other witnesses testified that they saw the spike on the following morning when the car was in the garage.

Defendant, testifying in his own behalf, stated that he had been employed for six years by the Cities Service Oil Company at Barnsdall. That he was doing some work at his home on Saturday, the 23rd day of September, 1939. That he went by the house of deceased, Burwyn Aldridge, about 12:30 and that they went out to a lease about two and one-half miles west of Barnsdall to repair an engine. A Mr. Harry Veazey was in charge of the engine. That he worked there about an hour, and the deceased secured a quart bottle with about half a pint of liquor therein. That the three each took two drinks out of the bottle. This was about 1:30 p. m. They then prepared sandwiches and coffee, and the three left the lease about 4 o'clock p. m. and went to Barnsdall, where he saw the witnesses who testified that he was not under the influence of intoxicating liquor at that time.

They started to Wynona to collect some money from a Mr. Ingersoll, who owed some money to Mr. Veazey. They did not find him at home and proceeded to Hominy to look for him. They remained in Hominy until about 7:30 p. m., and the three started back toward Wynona. The collision occurred after 8 p. m. just as they were going into Wynona. He testified that he felt his car swerve as if he had a flat tire. That he was traveling about 35 miles per hour. That he saw the first car and his car crossed the center line, and that he sideswiped this car. That he tried to straighten it up, but it swerved first to the right and then to the left and went across the center line head-on into the second car, which was 80 yards behind the first car. Proof showed that the second car was moving very slowly. Defendant was injured, his kneecap being broken, and other injuries. Burwyn Aldridge, who was his friend and who was sitting beside him, was killed. The passengers in the second car were not seriously injured. Defendant testified that he had

drunk no intoxicating liquors at any time since the two drinks taken on the lease about 1:30 p. m. The accident occurred between 8 and 8:30 p. m.

From the above statement, it will be seen that the evidence was conflicting. Under the law this issue became a question of fact for the jury to decide, and having decided it in favor of the state, this verdict and judgment and sentence will not be set aside by this court on appeal, where there is a conflict in the evidence. It is only when the evidence wholly fails to support the verdict or judgment that the same will be set aside.

This case again brings forcibly to our attention the liability of those who drive automobiles in this state in a manner contrary to the laws and statutes of this state. The thought, that it is necessary for one to be under the influence of intoxicating liquor before he may be convicted of a felony and that we have no statute limiting the speed one may travel in this state, is wrong. The murder, manslaughter in the first and second degree, driving while under the influence of intoxicating liquor, and the reckless driving statutes of this state were enacted for the protection of the citizens of this state. When strictly enforced, those who fail to comply with them may find themselves confronted with charges which will ultimately cause them to enter a felon's cell, even though they never thought they would violate the criminal laws of this state. Why not do as most drivers of automobiles do, "look and listen", before it is too late.

For the reasons above stated, the judgment and sentence of the district court of Osage county is affirmed.

JONES and DOYLE, JJ., concur.